COMMONWEALTH *vs.* BYRON HASEOTES.

Suffolk.    May 5, 1969. — June 23, 1969.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, SPIEGEL, &
REARDON, JJ.

*Weights and Measures.    Constitutional Law,* Police power, Weights and
measures, Equal protection of laws, Interstate commerce.   *Jurisdiction,* Federal field.   *Interstate Commerce.   Practice, Criminal,* Sentence.

G. L. c. 98, § 56B, making it a criminal offence for the proprietor of a retail outlet selling prepackaged meat, poultry or edible fish to neglect
or refuse to provide the outlet with a computing scale or to refuse to
reweigh such a prepackaged item in the presence of a purchaser on
request is a valid exercise of the police power [231];  does not deny
equal protection of the laws even if it does not apply to home delivery
trucks [233];  relates to a wholly intrastate activity and does not unduly burden interstate commerce [233–234];  and does not operate in
a field preëmpted by Federal law [235].
The provision of G. L. c. 98, § 56B, imposing for a violation thereof a
fine "of not less than" $100 authorizes a fine in that amount even
though no maximum penalty is provided.   [237]

COMPLAINT received and sworn to in the Municipal Court
of the Brighton District on September 26, 1968.

On appeal to the Superior Court the case was heard without jury by *Kelleher, J.,* a District Court judge sitting under
statutory authority.

*Allan van Gestel (Molly G. Teicholz* with him) for the defendant.

*James M. Kickham,* Assistant District Attorney, for the
Commonwealth.

WHITTEMORE, J.    The defendant was convicted in the
Superior Court by a judge sitting without a jury for violation of G. L. c. 98, § 56B,[1] and was fined $100.   His excep-

---

[1] General Laws c. 98, § 56B, as inserted by St. 1967, c. 19, reads: "Whoever
being engaged in the business of selling prepackaged meat, poultry or edible
fish *at retail* refuses or neglects to provide each outlet where said products are
sold with a computing scale or refuses to reweigh a prepackaged item of meat,
poultry or edible fish in the presence of a prospective purchaser, when so

tions are to the denial of his motion for the entry of a finding of not guilty and to the finding of guilty. The defendant's motion and his brief raise only the constitutional issues discussed below.

The evidence showed that the defendant was the secretary and treasurer of a corporation, Commonwealth Dairy Stores, Inc. (the company) that operated in the Suffolk County area about twenty retail stores carrying a line of grocery products "much the same as a miniature super market"; that these stores had no scales or computing scales in compliance with § 56B; that they stocked and offered for sale prepackaged meat and fish products packed by others than the company such as cold cuts, hot dogs, hamburgers, bacon, canned hams, fish items in cans and some frozen food items packed in air tight sealed packages or cans; and that the frozen food products are in cardboard containers inside cellophane wrappers.[2] A computing scale "of a less expensive type" would cost around $500. The weight shown on the scale of a packaged item (and hence the shown computed price) would of course reflect the weight of the container. To remove the contents of a canned item would cause the contents to deteriorate and become unsaleable. The absence of scales in two stores in the Brighton district of Boston and the refusal of the manager of one store to weigh a half pound package of bologna because there was "not a scale in the store" was shown by testimony of the Sealer of Weights and Measures.

1. Section 56B is a valid exercise of the police power. Its patent purpose is to give the purchaser, if he wishes it, some check on the weight and value, at the offered price, of the product purchased. It reflects the change in marketing practices from the time when the butcher responding to a

---

requested, shall be punished by a fine of not less than one hundred dollars. For the purpose of this section, a computing scale shall be deemed one that indicates the money values of a commodity weighed at predetermined unit prices throughout all or part of the weighing range of the scale" (emphasis supplied).

[2] The statute of course applies equally to stores that do their own packaging. It may be assumed that such stores will be likely to have a computing scale for their own convenience.

request for a pound of steak as a matter of course put what he had cut on a scale with a reading window on the customer's side of the counter as well as on the vendor's side.[3] The statute operates to give the customer for all practical purposes an accurate check on the weight and price of many cellophane wrapped items where the weight of the packaging is negligible. It gives a rough check on other items. As the Commonwealth points out, if a customer is purchasing a can of ham carrying a stated net weight of ten pounds, he will expect to see on the scale a weight of ten pounds and a few additional ounces. That the computing part of the scale, in the case of canned products, will not give a precise price reading does not make it unreasonable to require that the scale have a computing mechanism.

One "assailing a statute on constitutional grounds has the burden of proving the absence of any conceivable grounds upon which the statute may be supported." *Merit Oil Co.* v. *Director of the Div. on the Necessaries of Life,* 319 Mass. 301, 305. See *Mile Road Corp.* v. *Boston,* 345 Mass. 379, 382, and cases cited, for a recent summary statement of the applicable rules.

It was not beyond legislative competence to decide that the statute will reasonably protect retail purchasers against fraud, accident, carelessness, or mistake. The statute cannot be ruled to bear no "real and substantial relation to . . . some . . . phase of the general welfare" or to be "an arbitrary interference with business and an irrational and unnecessary restriction" as was the trading stamps and price statute considered in *Sperry & Hutchinson Co.* v. *Director of the Div. on the Necessaries of Life,* 307 Mass. 408, 418, 421. See *Commonwealth* v. *S. S. Kresge Co.* 267 Mass. 145, 151; *Slome* v. *Chief of Police of Fitchburg,* 304 Mass. 187, 191–192; *Druzik* v. *Board of Health of Haverhill,* 324 Mass. 129, 138–139; *Commonwealth* v. *Finnegan,* 326 Mass. 378, 379.

---

[3] In 1967 House Doc. No. 28, there is a series of eight recommendations for legislative action submitted to the Senate and House of Representatives by the Consumers' Council on October 27, 1966. Concerning this proposal, the recommendation said: "There are now in this Commonwealth some 200 retail establishments which are selling prepackaged meat, poultry and fish items

Compare *Mansfield Beauty Academy, Inc.* v. *Board of Regis-
tration of Hairdressers,* 326 Mass. 624, 627; *Coffee-Rich,
Inc.* v. *Commissioner of Pub. Health,* 348 Mass. 414, 422–
423, and cases cited.

Much of the defendant's argument stems from the as-
sumption that the statute requires that the container be
opened and the contents removed and weighed. This is
we think not a common sense construction. See *Atlas
Distrib. Co.* v. *Alcoholic Beverages Control Commn.* 354
Mass. 408, 414.

2. We assume with the defendant that the statute applies
to retail stores ("each outlet where said products are sold")
and does not apply to the delivery trucks of home delivery
milkmen or home delivery marketmen. We see in this,
however, no denial of equal protection of the laws. The
customer who for his own convenience orders food sent to
him effectively waives the opportunity for personal selection
available at the retail store and equally the opportunity for
verification on a computing scale. The distinction between
the retail store and the delivery truck is rational. See
*McQuade* v. *New York Cent. R.R.* 320 Mass. 35, 38–39;
*Russell* v. *Treasurer and Recr. Gen.* 331 Mass. 501, 508–509;
*Maher* v. *Brookline,* 339 Mass. 209, 213; *Sisters of the Holy
Cross of Massachusetts* v. *Brookline,* 347 Mass. 486, 495–
496. See also *McGowan* v. *Maryland,* 366 U. S. 420, 426;
*Gallagher* v. *Crown Kosher Super Mkt. of Mass. Inc.* 366 U. S.
617, 623–624. Compare *Hall-Omar Baking Co.* v. *Commis-
sioner of Labor & Indus.* 344 Mass. 695, 700–701, 707–708.

3. There is no basis for concluding that this statute or its
enforcement against the defendant unduly burdens inter-
state commerce. The extent to which the prepackaged

which are not provided with a suitable weighing device for checkweighing
and pricing the items which are, in fact prepackaged elsewhere. Unquestion-
ably, in many instances, these packages are deficient of the purported weight
and consequently overpriced by reason of shrinkage or poor packaging process.
There is a growing tendency toward centralized packaging of fresh meats,
poultry and fish, and there will be a growing practice of dispensing these items
at outlets not provided with weighing devices. It is the opinion of the Con-
sumers' Council that not only is it essential that the scale be provided for
frequent weight and price checking by the dealer but for checking in the
presence of the prospective purchaser when so requested."

Commonwealth *v.* Haseotes.

products to which it applies are produced and packaged out of the State is not shown.[4]

The operation of a retail store is a wholly intrastate activity. The statute imposes no sanctions on interstate activities or in respect of the stocking or sale of any item. Whether the item is packaged in Boston or Chicago the only sanction of the statute is that the particular customer has the option of refusing to buy it. "The interstate commerce clause did not withdraw from the states the power to legislate with respect to their local concerns, even though such legislation may indirectly and incidentally affect interstate commerce and persons engaged in it." *Boston & Maine R.R.* v. *Armburg*, 285 U. S. 234, quoted in *Commonwealth* v. *New York Cent. R.R.* 350 Mass. 724, 728. As in the *New York Central* case there is presented a local problem without effect on national or interstate uniformity (350 Mass. 729). Compare *Southern Pac. Co.* v. *Arizona*, 325 U. S. 761, 775–776, 781–782. It is speculative whether this statute will have any effect on the selection by Massachusetts retailers of the products they handle. It can have no tendency to make less likely the selection for purchase in a particular store of items that came to the retailer in the course of interstate commerce or to diminish the purchase generally by consumers of such items. Compare *Opinion of the Justices*, 211 Mass. 605, 606–608 (prison-made goods may not be required to be so marked). In our judgment the indirect burden on the interstate movement of goods of the cost of scales to weigh them when sold is minimal.

The defendant argues that even if the local interest is served, there are less restrictive adequate alternatives. See *Dean Milk Co.* v. *Madison*, 340 U. S. 349, 354. We disagree. The Federal and Massachusetts statutes to which the defendant refers (see part 4 of this opinion) do not do

---

[4] The only evidence on the point was that the defendant brought to the trial a can of roast beef packed by Wilson & Company of Chicago, Illinois, with a statement of net weight on the outside. Also the sealer testified that the package of bologna he had asked to have weighed bore the label of New England Packing Company and to the best of his knowledge was packaged by that company.

what this statute does in enabling the purchaser to verify his purchase immediately prior to buying it. Nor would the aim of the statute be met by placing Massachusetts inspectors to examine the packaging (see and compare G. L. c. 112, § 87AAA, as amended by St. 1966, c. 422), in packing plants throughout the country even if such procedure could be deemed feasible and reasonable.

4. The field for operation of § 56B has not been preëmpted by Federal law.

Federal regulation of the processing, packing, marking and labeling of meat, poultry and fish is extensive and detailed. Meat Inspection Act, 21 U. S. C. §§ 601–691 (Supp. III, 1967). 9 C. F. R. Parts 301–340 (1968). Similar regulation for poultry exists in the Poultry and Poultry Products Inspection Act, 21 U. S. C. §§ 451–470, Pub. L. 90–492, August 18, 1968, 82 Stat. 792–807; and for fish products in the Food, Drug and Cosmetic Act, 21 U. S. C. § 372a (1964), in the Fair Packaging and Labeling Program, 15 U. S. C. §§ 1451–1461 (Supp. III, 1967), and in 21 C. F. R. Parts 1, 5, 36–37, 85 (1969).[5]

We assume, without deciding, that any State statute would be void which purported to impose for the products to which the Federal statutes and regulations apply, stricter or conflicting standards. See *McDermott* v. *Wisconsin*, 228 U. S. 115, 131–134; *Cloverleaf Butter Co.* v. *Patterson*, 315 U. S. 148, 154–167. General Laws c. 98, § 56B, does not present any such express conflict.

The issue is whether there has been such total preëmption of the control of prepackaged meats, poultry and fish that § 56B is void, even if it is only "complementary state regulation." *Campbell* v. *Hussey*, 368 U. S. 297, 300–302 (Federal statute which creates uniform national classes of tobacco preëmpts the field of a State statute which requires a special label for so much of one such class of tobacco as is grown in that State).

---

[5] The Commonwealth has also enacted legislation in the foregoing area. G. L. c. 94, §§ 77A–88D, 92B, 146–153A, 181–184, 190–195. Certain of these sections, dealing with the marking of packages, are expressly tied to the Federal Food, Drug and Cosmetic Act. See §§ 181, 182, 192.

Commonwealth *v.* Haseotes.

"The intention of Congress to exclude States from exerting their police power must be clearly manifested." *Napier* v. *Atlantic Coast Line R.R.* 272 U. S. 605, 611, and cases cited (Federal act occupied field of regulating locomotive equipment). See also *Rice* v. *Santa Fe Elev. Corp.* 331 U. S. 218, 231–236 (regulation of warehouses licensed under Federal act; intent to preëmpt field plainly inferable from language of statute, its history, and its amendments). *Pennsylvania* v. *Nelson,* 350 U. S. 497 (Federal law preëmpts State sedition statute).

We perceive in the Federal statutes no clear intent that States may not act to give customers the means of verifying what they purchase. Our statute is not concerned with production, marking, labeling, packaging or ingredient requirements. The expressed congressional intent to supersede State laws in respect of these matters [6] is not so inclusive as to imply State exclusion from complementary areas. See *Florida Lime & Avocado Growers, Inc.* v. *Paul,* 373 U. S. 132, 146–152. (Federal Agricultural Marketing Agreement Act does not evidence any congressional intent to displace State law concerning the regulation of retail distribution of avocados.)

The defendant misstates the effect of § 56B. In no sense does it "require a stricter standard of exact weight" than is allowed by Federal law and regulation. True, several acts and regulations under them impose requirements so that within permitted tolerances the statement of contents on the label will be accurate. See 9 C. F. R. § 317.8 (1968) regulating the contents of prepackaged meat; 21 U. S. C. § 453 (h) (5) (poultry); 21 U. S. C. § 372a (1964), and 21 C. F. R. §§ 1.1, 1.8, 5.7, 36.3–36.31, 37.1–37.3 (1969). But § 56B imposes *no* standard. We think it fanciful to suggest that the opportunity for some verification of actual to labeled weight has the indirect effect of establishing a standard of weight which may differ from or be stricter than the Federal standard as reflected on the label.

[6] 21 U. S. C. § 678 (Supp. III, 1967). 15 U. S. C. § 1461 (Supp. III, 1967). 21 U. S. C. § 467 (e), Pub. L. 90–492, August 18, 1968, 82 Stat. 807.

5. The trial judge construed the statute (which imposed no maximum penalty) to give him authority to impose the fine which is specified as the minimum. We hold that the statute did properly authorize at least this. We see no constitutional point that requires discussion. We assume there may have been a drafting inadvertence which legislative amendment appropriately can overcome.

*Exceptions overruled.*