OPINION OF THE JUSTICES TO THE HOUSE OF
REPRESENTATIVES.

*Aircraft. Jurisdiction,* Federal field, Aircraft. *Constitutional Law,* Federal
field, Aircraft.

Proposed legislation which, by imposing a certain limitation on noise level,
would in effect prohibit any commercial super sonic transport aircraft
from landing or taking off anywhere in the Commonwealth was so broad
that it would be unconstitutional as intruding upon a field preëmpted
by the Congress.

On June 25, 1971, the Justices submitted the following
answer to a question propounded to them by the House of
Representatives.

To the Honorable the House of Representatives of the
Commonwealth of Massachusetts:

. The Justices of the Supreme Judicial Court respectfully
submit this answer to the question in an order adopted by
the House of Representatives on April 20, 1971, and trans-
mitted to us on April 27. The order recites the pendency
before the General Court of a bill printed as Senate No.
1161, as amended by the House, entitled, "An Act pro-
hibiting super sonic transport [SST] planes from landing or
taking off in the commonwealth." The bill reads, "Not-
withstanding the provision of any law, unless there is an
emergency, no commercial super sonic transport plane which
is not capable of limiting its noise level to one hundred and
eight decibels or less while landing, on the ground, or taking
off will be permitted to land or to take off in the common-
wealth."

The order sets forth, among others, the following recitals:
(a) that the SST will not only be engaged in interstate com-
merce but will also be engaged in international flights pur-

suant to the various treaties relative to air travel now in existence between the United States and many foreign nations; (b) that art. 1, § 8, of the Constitution of the United States provides in part that Congress shall regulate commerce with foreign nations and among the several States; and (c) that grave doubt exists as to the constitutionality of the bill if enacted into law.

The question is:

"Is it constitutionally competent for the General Court to enact said Senate, No. 1161, amended, which in effect prohibits the landing of any commercial super sonic transport aircraft at any airport within the commonwealth notwithstanding that the operation of such aircraft in interstate and international commerce is regulated by the Congress?"

We invited briefs from interested persons to be filed by May 18. In response, careful briefs or other helpful memoranda were filed by or in behalf of the following: The Attorney General, the Counsel to the House of Representatives, the Massachusetts Port Authority, the Department of Transportation of the United States and the Federal Aviation Administration (FAA), the Civil Aeronautics Board (CAB), the Conservation Law Foundation of New England, Inc., Boston Lawyers for a Better Environment, the Massachusetts Forest and Park Association, the Air Transport Association of America, and the Société Nationale Industrielle Aerospatiale.

Where, as here, the State proposes legislation in an area involving interstate and foreign commerce in which Congress already has enacted comprehensive statutes, it becomes necessary to inquire whether the State action is precluded because Congress has preëmpted the field. *Hines* v. *Davidowitz*, 312 U. S. 52, 66–67. *Campbell* v. *Hussey*, 368 U. S. 297. In determining whether there has been Federal preëmption the purpose of Congress in enacting the applicable statutes must be ascertained. *Rice* v. *Santa Fe*

*Elev. Corp.* 331 U. S. 218, 230.  See *Florida Lime & Avocado Growers, Inc.* v. *Paul,* 373 U. S. 132, 142.  Federal preëmption preventing the proposed State action may be indicated in various ways:  (a) The Federal scheme may be so pervasive as to show that Congress left no room for the States to supplement it.  (b) The Federal interest in the field may be so dominant that the Federal statutory system will prevent enforcement of State laws on the subject.  (c) State policy may conflict with Federal objectives.  See *Pennsylvania* v. *Nelson,* 350 U. S. 497.  As this court has stated, "'The intention of Congress to exclude States from exerting their police power must be clearly manifested.'"  *Commonwealth* v. *Haseotes,* 356 Mass. 230, 236, quoting *Napier* v. *Atlantic Coast Line R.R.* 272 U. S. 605, 611.

The Federal government has asserted a broad authority to control and regulate the use of navigable airspace and aircraft operations.  The principal statute in the present comprehensive scheme of Federal control is the Federal Aviation Act of 1958, 49 U. S. C. §§ 1301–1542 (1964), as amended.  Under this act, the United States is declared "to possess and exercise complete and exclusive national sovereignty in the airspace of the United States."  49 U. S. C. § 1508 (a) (1964), and §§ 1655 (c), 1657 (f) (Supp. V, 1965–1969).  Each citizen of the United States is granted the "right of freedom of transit through the navigable airspace of the United States."  See 49 U. S. C. § 1304 (1964), and §§ 1655 (c), 1657 (f) (Supp. V, 1965–1969).  "Navigable airspace" is defined as all airspace "above the minimum altitudes of flight prescribed by regulations issued under this chapter, and shall include airspace needed to insure safety in take-off and landing of aircraft."  See 49 U. S. C. § 1301 (24) (1964), and §§ 1655 (c), 1657 (f) (Supp. V, 1965–1969).  The act established the Federal Aviation Agency, headed by an administrator (later transferred to the Secretary of Transportation, 49 U. S. C. §§ 1655 [c], 1657 [f] [Supp. V, 1965–1969]), and conferred upon that agency broad powers to regulate air commerce in the public interest.  See 49 U. S. C. §§ 1303, 1341 (a), 1348 (1964),

and §§ 1655 (c), 1657 (f) (Supp. V, 1965–1969). The act confers upon the administrator vast powers over all aspects of aircraft navigation. These powers include, among other things, authority for the development of plans and policy with respect to the use of navigable airspace and allotment of the use of such airspace. See 49 U. S. C. § 1348 (a) (1964), and § 1655 (c) (Supp. V, 1965–1969). The administrator also has general authority to issue such orders, rules and regulations as he deems necessary to carry out the provisions of the act. See 49 U. S. C. § 1354 (1964), and §§ 1655 (c), 1657 (f) (Supp. V, 1965–1969).

Federal legislative action has been taken directly in the field which Senate Bill No. 1161, amended, purports to regulate. This has been done by the 1968 amendment to the Federal Aviation Act of 1958. See 49 U. S. C. § 1431 (Supp. V, 1965–1969). The amendment directs the FAA administrator to prescribe standards for the measurement of aircraft noise and sonic boom and rules and regulations for the control and abatement of aircraft noise and sonic boom. Pub. Law (90th Cong.) 411, § 1, 82 Stat. 395. 49 U. S. C. § 1431 (Supp. V, 1965–1969). The legislative history of the 1968 amendment contains, however, some indication that Congress did not intend completely to exclude all State action in the field of aircraft noise control. Senate Rep. No. 1353, 90th Cong., 2d Sess., 2 U. S. Code Cong. & Adm. News, 1968, p. 2694, states in part, "[T]he proposed legislation will not affect the rights of a State or local public agency, as the proprietor of an airport, from issuing regulations or establishing requirements as to the permissible level of noise which can be created by aircraft using the airport. Airport owners acting as proprietors can presently deny the use of their airports to aircraft on the basis of noise considerations so long as such exclusion is nondiscriminatory."

In issuing regulations pursuant to the 1968 amendment, the FAA has acted consistently with the legislative history in leaving some authority to airport proprietors in the regulation of noise. The amendment to the regulations is prefaced by the following statement: *"Relation to responsibility*

*of airport proprietors.* Compliance with Part 36 is not to
be construed as a Federal determination that the aircraft is
'acceptable,' from a noise standpoint, in particular airport
environments.    Responsibility for determining the per-
missible noise levels for aircraft using an airport remains
with the proprietor of that airport.   The noise limits specified
in Part 36 are the technologically practicable and eco-
nomically reasonable limits of aircraft noise reduction
technology at the time of type certification and are not
intended to substitute federally determined noise levels for
those more restrictive limits determined to be necessary by
individual airport proprietors in response to the locally de-
termined desire for quiet and the locally determined need
for the benefits of air commerce.   This limitation on the
scope of Part 36 is required for consistency with the respon-
sibilities placed upon the airport proprietor by the U. S.
Supreme Court in *Griggs* v. *Allegheny County*, 369 U. S.
84 . . . .   Consistent with this limited scope, this amend-
ment specifies that the Federal Aviation Administration
makes no determination, under Part 36, on the acceptability
of the prescribed noise levels in any specific airport environ-
ment (see §§ 36.5 and 36.1581 (a))."   See 34 Fed. Reg. 18355.
The regulations themselves state, "No determination is
made, under this part, that these noise levels are or should
be acceptable or unacceptable for operation at, into, or out
of, any airport."   14 C. F. R. § 36.5.   Also the regulations
apply only to certain classes of subsonic aircraft.   14 C. F. R.
§ 36.1.

*American Airlines, Inc.* v. *Hempstead*, 272 F. Supp. 226
(E.D. N. Y.), affd. 398 F. 2d 369 (2d Cir.), cert. den. sub
nom. *Hempstead* v. *American Airlines, Inc.* 393 U. S. 1017,
dealt with a town noise ordinance based upon decibel count
which in effect required that aircraft deviate from FAA
flight patterns.   The Court of Appeals held that the or-
dinance was invalid since it was in direct conflict with FAA
procedures for aircraft flying into Kennedy Airport. That
court expressly did not reach the preëmption or commerce

issues stating, "it is this particular noise ordinance in this particular setting which is found to regulate flight paths and procedures; another noise ordinance might not have that effect." See 398 F. 2d at 376, n. 4. The United States District Court judge had ruled that there was Federal preëmption and that the ordinance was in conflict with Federal regulations and a burden on commerce. See *Allegheny Airlines, Inc.* v. *Cedarhurst,* 132 F. Supp. 871 (E.D. N. Y.), affd. 238 F. 2d 812 (2d Cir.) (ordinance requiring aircraft to fly over village at higher altitudes than that required by FAA regulations held unconstitutional). Compare *Loma Portal Civic Club* v. *American Airlines, Inc.* 61 Cal. 2d 582 (California Supreme Court denied that Federal legislation had so preëmpted the field as to bar all State or local action affecting flight operations).

The *Hempstead* case, of course, was decided prior to the 1968 amendment to the Federal Aviation Act and did not involve an airport proprietor. Nevertheless, the principles expressed in that case and the comprehensive character of the Federal air statutes and regulations, existing even prior to 1968, lead us to conclude that the proposed Massachusetts legislation would intrude upon an area preëmpted by the Congress. Assuming without deciding that there has not been complete Federal preëmption of the field of noise control (at least with respect to action by a State or local public agency, as proprietor of an airport wholly owned and operated by the State or its agency) we conclude that Senate Bill No. 1161, as amended, is so broad as to exceed any permissible State action. See *American Airlines, Inc.* v. *Hempstead, supra; American Airlines, Inc.* v. *Audubon Park,* 407 F. 2d 1306 (6th Cir.), cert. den. sub nom. *Audubon Park* v. *American Airlines, Inc.* 396 U. S. 845; *Rosenhan* v. *United States,* 131 F. 2d 932 (10th Cir.), cert. den. 318 U. S. 790. The bill is not framed in terms of a State or local public agency acting as an airport proprietor and operator. Instead it purports to prevent nonconforming aircraft from landing or taking off anywhere in the Commonwealth.

This exceeds any area which may still be left subject to State regulation. The legislative history of the 1968 amendment recognizes the breadth of the preëxisting Federal preëmption for it states that the amendment "would merely expand the Federal Government's role in a field already preempted. . . . State and local governments will remain *unable to use their police powers* to control aircraft noise by regulating the flight of aircraft" (emphasis supplied). Sen. Rep. No. 1353, 90th Cong., 2d Sess., 2 U. S. Code Cong. & Adm. News, 1968, p. 2694.

Even if the bill were framed in terms of "airport proprietors," there would still be serious doubt about its constitutional validity. Recently, the FAA issued notice of proposed noise control with respect to supersonic aircraft. See 35 Fed. Reg. 6189, 16980, 12555. Federal action in this field may well invalidate any State action in the area. Also, although the Justices have insufficient evidence to advise on this point, the extremely complex procedures established by the FAA for evaluating noise (14 C. F. R. § 36.1581) may conflict with the simple and possibly imprecise "108 decibels" standard prescribed by the proposed legislation. Furthermore, if State regulation of noise in fact does have any effect on the operation of aircraft in the Commonwealth, there would remain the question whether the bill imposes an unreasonable or discriminatory burden on interstate commerce [1] or conflicts with any treaty obligation of

---

[1] Having concluded that there is preëmption, we do not reach the question whether the bill imposes an unreasonable or discriminatory burden on interstate commerce. Moreover, there would presently be no basis of facts to answer the question with intelligence. In *Southern Pac. Co.* v. *Arizona*, 325 U. S. 761, 770, the court stated, "Congress . . . has been aware that in their application state laws will not be invalidated without the support of relevant factual material which will 'afford a sure basis' for an informed judgment." See also *Terminal R.R. Assn. of St. Louis* v. *Brotherhood of R.R. Trainmen*, 318 U. S. 1, 8; *Bibb* v. *Navajo Freight Lines, Inc.* 359 U. S. 520, 524. The Justices have no basis before them for deciding whether the SST (or any other aircraft) can land or take off at a noise level below 108 decibels or for knowing what that standard implies in terms of effect on the use of aircraft. See *Commonwealth* v. *Haseotes*, 356 Mass. 230, 233–234. Even if the bill would place a burden on interstate aircraft commerce, there would remain the question whether any State interest justifies such a burden. See *Huron Portland Cement Co.* v. *Detroit*, 362 U. S. 440.

the United States Government. We need not, however, reach these difficult issues.

We answer the question, "No."

G. JOSEPH TAURO.
JOHN V. SPALDING.
R. AMMI CUTTER.
JACOB J. SPIEGEL.
PAUL C. REARDON.
FRANCIS J. QUIRICO
ROBERT BRAUCHER.