COMMONWEALTH *vs.* ROY E. HEFFNER, JUNIOR.

Plymouth.   October 2, 1939. — December 27, 1939.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & COX, JJ.

*Lottery. Theatre. Evidence,* Materiality. *Practice, Criminal,* Charge to jury, Requests, rulings and instructions.

A scheme called "bank night," by which prizes were given away in a theatre on a certain evening to persons drawn by lot from previous registrants who might or might not have paid for admission on that evening, the prize winners being announced both within and outside the theatre, could be found to be a lottery under G. L. (Ter. Ed.) c. 271, § 7, where the evidence warranted a finding that some of those who paid for admission on that evening paid their money in part for a better chance at the prizes.

At the trial of a complaint for promoting a lottery by means of a "bank night" in a theatre, testimony that large numbers of people in the vicinity "knew bank night was free" properly was excluded as immaterial.

Quotation by a trial judge to the jury from opinions of this court is proper if applied to the case on trial without leaving a false impression as to the jury's duty.

A trial judge who properly stated to the jury at a criminal trial the true test to determine whether the defendant was guilty or not was not required to give in terms requests for rulings seeking to have him exclude from their consideration various false tests.

COMPLAINT, received and sworn to in the Fourth District Court of Plymouth on December 31, 1938.

On appeal to the Superior Court, the complaint was tried before *J. M. Hurley,* J., a district court judge sitting under statutory authority. The judge instructed the jury in part as follows: "One important feature of the plan was the necessity that the person whose name was drawn should appear at once and claim the deposit. A partici-

pant inside the theatre would have the advantage of immediate presence, in a place of comfort. He could hear the number and the name read. He could identify himself at once. A participant outside the theatre must wait, in the hope that if his name should be drawn within he would be notified and would hear the call soon enough to get through the crowd, toward the front of the theatre, within the allotted time. The test in this case for you to determine whether or not a price was paid is to determine: Did any of those people who were inside the theatre pay their admission in part for the purpose of being inside and participating in the drawing of that prize? If you are satisfied beyond a reasonable doubt that some of those in attendance — some of those people in attendance within the theatre that night — paid their price in part for the purpose of participating in that prize, then your finding should be guilty. . . . The test is: Did some of those people who attended the theatre the night of the drawing, did they pay the price in part for the opportunity of being present and participating in the prize."

The defendant was found guilty and alleged exceptions.

*G. S. Ryan,* for the defendant.

*J. R. Wheatley,* Assistant District Attorney, for the Commonwealth.

QUA, J. The defendant has been convicted of setting up and promoting a lottery in violation of G. L. (Ter. Ed.) c. 271, § 7. The lottery consisted in the operation of an advertising scheme called "Bank Night" by which prizes were given away to persons who had previously registered and whose numbers were drawn on a platform in front of the screen in a moving picture theatre at Middleborough of which the defendant was manager.

The general plan of "Bank Night" as operated by the defendant was similar to that described in *Commonwealth v. Wall,* 295 Mass. 70, and need not be described in detail here. At the exhibition in the evening of the day specified in the complaint the defendant, inside the theatre, called the name of one Boehme as a prize winner. According to the evidence Boehme was then on a parking lot where "the

crowds gathered" outside and in the rear of the theatre. A door man announced Boehme's name from the fire escape, and Boehme came into the theatre without paying for admission and obtained a prize of $100.

There was no error in the refusal to direct a verdict for the defendant. In *Commonwealth* v. *Wall*, 295 Mass. 70, 72–73, we held that the essence of a lottery is "a chance for a prize for a price"; that the price must be something of value and not merely the formal or technical consideration, such as registering one's name or attending at a certain place, which might be sufficient consideration to support a contract; that the price "must come from participants in the game in part at least as payments for their chances"; that "the indirect advantage to the theatre of larger attendance is not in itself a price paid by participants"; and that the test whether a "Bank Night" is a lottery "is not whether it was possible to win without paying for admission to the theatre," but is "whether that group who did pay for admission were paying in part for the chance of a prize." Upon evidence outlined in the opinion in that case we held that the jury could find that the crowds which filled the theatre on "Bank Night" "paid to come in partly because they had, or reasonably believed they had, a better chance to win the prize than if they had stayed outside, that they paid their money in part for that better chance, and that the scheme in actual operation was a lottery." We think that the jury could make similar findings in this case.

Without undertaking to state all the evidence, there was testimony tending to show the following: On December 22, which was a "Bank Night," the theatre was filled, except several rows in the extreme front. On December 28, which was not a "Bank Night," the theatre was little more than half filled. On December 28 the attendance was one hundred thirty-one, but on December 29, "Bank Night," although the show was the same, the attendance was three hundred thirty-two. More people came on "Bank Night" than on the other night when the same show was given. "Bank Night" advertised the theatre, so that more people

would come. On "Bank Night" the crowds outside the theatre ranged from one or two hundred to three or four hundred. The announcement of winners was made at the parking lots in the rear in order not to have the sidewalk and street crowded. Signs posted at the theatre indicated that the announcement would be made in the rear. Three minutes after his name was announced were allowed for the winner to appear on the stage or present himself to the door man. When Boehme's name was called he "ran" to the front of the theatre. He got in, as the jury could find, about a minute before his time expired. Others whose names had been called outside "ran" or "hurried" into the theatre. There was some further testimony that witnesses had attended inside the theatre because of "a chance to win some money" or "partly because the theatre was giving away one hundred dollars." One witness testified that after Thanksgiving it became too cold to stand outside on "Bank Nights" and she went into the theatre. There was much other evidence tending to show that more prize winners had come from without than from within the theatre; that they had arrived in time without difficulty and had received their prizes without paying for admission; and that patrons knew they had as good a chance outside as inside. It was, of course, for the jury to determine the credibility and the weight of the evidence. We cannot say that on all the evidence a finding that patrons who were attracted into the theatre on "Bank Night," paid their admission fees in part for a better chance at the prize was not a reasonable conclusion which could be reached by an honest and practical jury. If the jury reached that conclusion they were justified in convicting the defendant. *Commonwealth* v. *Wall*, 295 Mass. 70.

Perhaps it would be more convenient for law enforcement officers and for such proprietors of theatres as care to use this kind of advertising if we could issue a pronouncement either that "Bank Night" is a lottery or that it is not a lottery. But there is no peculiar law applicable to "Bank Night" under which we can make a ruling of that kind. Each instance must be judged by the general principles of

law relating to lotteries as applied to the facts which could be found upon the evidence and the permissible inferences from those facts. The facts and permissible inferences vary with time, method, and the physical arrangement of the premises. We can no more say that it can never be possible to operate the plan called "Bank Night" so as wholly to remove the element of price paid for a chance from the admission fee charged those who enter than we can say that as a matter of law the plan is always free from that taint. It seems likely that the decision will commonly, though not always, rest in the domain of fact.

There was no error in excluding evidence of declarations made out of court of "large numbers" of "people in Middleborough," not shown to have been patrons of the theatre, that they "knew Bank Night was free." Without discussing evidence of this kind in other respects, it is enough to say that the beliefs of these people do not appear to have been material, and that it would have been wholly impractical to enter into such a field of inquiry. See *Bemis* v. *Temple*, 162 Mass. 342, 344.

The defendant complains that the judge quoted to the jury in his charge expressions from the opinion in *Commonwealth* v. *Wall* in such a manner as to prejudice his rights. It is proper to quote or to paraphrase to the jury statements made by this court in decided cases, provided of course that care is taken to see that the statements are properly applied to the case in hand and do not leave any false impression as to the duty of the jury. *Commonwealth* v. *Dow*, 217 Mass. 473, 483. We think that the judge did not offend in this respect. The quotations were applicable to this case. Correct tests of criminality were given to the jury in accordance with *Commonwealth* v. *Wall*.

There was no error in refusing to instruct the jury that "any increase in attendance" at the theatre because of "Bank Night" "is not in itself a price paid by participants." Taking the request literally, there was no reason to apprehend that any jury would find that an increase in attendance was a price. But if the request be taken to mean that the pecuniary advantage to the theatre from larger attendance

was not a price paid by participants for a prize (*Commonwealth* v. *Wall*, 295 Mass. 70, 75–76), still there was no error in refusing to give it in terms. The jury were correctly and repeatedly instructed that the test was whether those who paid for admission paid in part for a chance for a prize. That was the true test of the payment of the "price" necessary to a lottery. The judge was not required to go through a process of exclusion of various false tests of "price" which might have tended only to confuse the jury. See *Buckley* v. *Frankel*, 262 Mass. 13, 15–16; *Commonwealth* v. *Polian*, 288 Mass. 494, 499.

The remaining requests that have been argued are covered in principle by what has already been said or were given in substance in so far as consistent with *Commonwealth* v. *Wall*. We find no error in the manner in which the judge dealt with them.

*Exceptions overruled.*