THE STATE OF DELAWARE v. ECKERD'S SUBURBAN, INC., a Delaware corporation.

(*October* 26, 1960.)

SOUTHERLAND, C. J., WOLCOTT and BRAMHALL, J. J., sitting.

*Andrew B. Kirkpatrick, Jr.,* and *David C. Rittenhouse* (of Morris, Nichols, Arsht and Tunnell) for Eckerd's Suburban, Inc.

*Clement C. Wood,* Chief Deputy Attorney-General, for the State.

Supreme Court of the State of Delaware, No. 28, 1960.

WOLCOTT, J.:

This is a certification from the Superior Court of New Castle County which arose as a result of a motion to dismiss informations filed against the defendant alleging a violation of Article 2, § 17 of the Constitution, *Del. C. Ann.,* and 11 *Del. C.* § 662, both of which, generally speaking, bar the holding of a lottery in the State of Delaware.

The facts upon which the information is based are that the defendant drug store gives to each purchaser of goods or to any non-purchaser who requests them, duplicate tickets which contain a letter and number. One of the duplicate tickets is thereupon deposited in a container from which, each week, one ticket is drawn, the holder of which is thereupon entitled to a cash prize. Upon the drawing of the ticket, the winning number is announced by an employee of the defendant. The number on the winning ticket is then posted on signs in the center of the defendant's store and, also, in the windows facing the outside. The winning ticket is drawn each Saturday night and if, thereafter, before the following Tuesday night, the holder of the winning ticket presents the duplicate, he wins the cash prize. Initially, the cash prize is fixed at $50, but if it is not drawn out by the holder of the winning ticket, then that additional amount is added for each week until the prize is won.

The informations filed by the State charge that the defendant maintaining the above described scheme is guilty of the crime of maintaining a lottery in violation of the Constitution and statutes of the State of Delaware.

Article 2, § 17 of the Delaware Constitution provides as follows:

"Section 17. Lotteries. The sale of Lottery Tickets, pool selling and all other forms of gambling are prohibited in this State; except wagering or betting on races at race tracks by the use of pari-mutuel machines or totalizators in connection therewith.

"The General Assembly shall enforce this Section by appropriate legislation."

The specific statute of the State which the defendant is charged to have violated is 11 *Del. C.* § 662, which provides as follows:

"Whoever is concerned in interest in lottery policy writing, or in selling or disposing of any lottery policy or certificate, or number or numbers or anything by which such person or any other person or persons promise or guarantee that any particular number or numbers, character, ticket or certificate, shall in the event or on the happening of any contingency in the nature of a lottery, entitle the purchaser or holder to receive money or property or evidence of debt; or

"Whoever uses or employs any other device by which such person or any other person promises or guarantees as provided in the first paragraph of this section—

"Shall be fined not less than $100 nor more than $1,000, and in default of the payment thereof, imprisoned not less than 1 nor more than 12 months."

Based upon the foregoing facts, the Superior Court, following the motion to dismiss the informations, certified to us the following question:

"Do the transactions set forth in the information, briefly summarized in paragraph B hereof, constitute a lottery within the meaning of Article II, Section 17 of the Constitution of the State of Delaware and Title 11, Section 662 of the *Delaware Code of* 1953?"

The defendant argues that the crime of conducting a lottery in the State of Delaware is not committed unless the participants make a wager of value in order to enter into the drawing. The defendant argues that its scheme is primarily advertising and that it is not necessary, in order for a person to participate in the drawing, for him to give anything of value or make a purchase at the defendant's store. Thus, says the defendant, since a lottery comprises three elements, *viz.*, prize, chance, and the passing of consideration from the participant to the person charged with holding the lottery, the third element of consideration is absent and, hence, no crime against the laws of this State has been committed.

The State, in answer to the contention of the defendant, relies exclusively upon the case of *Affiliated Enterprises, Inc. v. Waller*, 1 *Terry* 28, 5 *A.* 2d 257, a decision of the Court in Banc upon a similar charge growing out of the scheme formerly prevalent among the theatres of the state called "Bank Night".

The scheme of "Bank Night" was operated, generally speaking, as follows: The theatre maintained a registration book in which all persons were invited to register their names free of charge, provided that no one person was permitted to register more than once. Upon registration, a number was assigned to each name, which numbers were placed in a container. One night of each week one number was drawn from the container and an announcement made to the audience

then in the theatre, and to any persons then on the outside of the theatre, of the number drawn. Thereupon, if the presence of the person holding the drawn number was made known within a certain number of minutes after the drawing, that person received the prize. If the holder of the number drawn was not in the audience within the theatre but was, in fact, outside, free admittance of such person to the theatre was given. The details of the method of drawing and the information that it was not necessary to purchase an admission ticket in order to register or participate was advertised by large signs in front of the theatre.

These circumstances were held by the Court in Banc to constitute a lottery within the meaning of the Delaware Constitution and statute set forth above. The court held that a lottery had three essential elements, *viz.*, prize, chance, and consideration. The controversy in the *Affiliated Enterprises* case was whether or not the element of consideration was met by the above described scheme, since it was conceded that the elements of prize and chance were admittedly present.

The court held that the element of consideration was present. It was further held that consideration in the sense in which it is an element of a lottery need not consist of money or something of actual pecuniary value, but could consist of an act done at the request of the holder of the lottery if that act is one bargained for by the holder of the lottery. The court pointed out that the "Bank Night" scheme was based on the making of a profit at the expense of gullible chance-takers and that, while it pretended to offer a gratuity, what, in fact, was offered was a prize paid out of the funds produced at least in part by the scheme, itself.

We have carefully considered the "Bank Night" scheme held to be a lottery in the *Affiliated Enterprises* case in comparison with the scheme conducted by the defendant at bar. We are unable to distinguish in principle between the two schemes. To hold, therefore, that the informations before

us do not charge the commission of the crime of maintaining a lottery, it would be necessary for us to overrule the *Affiliated Enterprises* case. The defendant urges us to do so, whereas the State contends that we are bound by the decision in the *Affiliated Enterprises* case.

As we have stated, *Affiliated Enterprises v. Waller, supra,* was a decision of the Court in Banc, a forum provided by the Constitution prior to the amendment of 1951. The Court in Banc consisted of all of the law judges of the state and from its decision no appeal was permitted.

In *Ownbey v. Morgan's Executors,* 7 *Boyce* 297, 105 *A.* 838, the Supreme Court pointed out that the Court in Banc, while in a sense an appellate court for review of questions of law pending in the Superior Court, was nevertheless not a final court of review as a consequence of which its decisions were not absolutely binding as precedents upon the Supreme Court.

While this is the fact, nevertheless, the decisions of the Court in Banc, reached by all of the law judges of the state sitting together, are entitled to great weight by this court, as well as by the trial courts of the state, and should not be disregarded unless they are clearly wrong or unless there are sound reasons of public policy requiring that they be disregarded. *Mayor and Council of Wilmington v. St. Stanislaus Kostka Church,* 10 *Terry* 5, 108 *A.* 2d 581.

We think, therefore, that the *Affiliated Enterprises* case should be followed by us unless it is clearly wrong, or unless there is some sound reason of public policy which makes the overruling of it desirable.

First, as to whether the decision is clearly wrong, we note that there is a sharp split of authority upon the question of whether or not similar schemes constitute lotteries. The Court in Banc in its opinion made note of the two lines of authority. Neither line of authority can be said with complete

assurance to be the correct one. Under the circumstances, therefore, we do not feel that we can say that the adoption of one of two lines of divergent authority, both of which are supportable in logic, can be clearly wrong.

We are of the opinion, also, that there is no sound and compelling reason of public policy which should lead us to disregard the decision of the Court in Banc in the *Affiliated Enterprises* case. We say this because that decision was handed down in March of 1939 and has been regarded as the law since that time. The lapse of over twenty-one years with no action taken by the General Assembly to change the result reached in the *Affiliated Enterprises* case, in our opinion, establishes that the public policy expressed in that case is an incident which meets with the approval of the Legislative Branch of this government.

In view of this, therefore, we think we are not at liberty to decide at this late time that the public policy of this state requires a different result. The inaction of the General Assembly, by which the state's policy should be determined, we think, precludes further examination of the question.

For the foregoing reasons the answer to the certified question must be in the affirmative.