MOBIL OIL CORPORATION & others *vs.* ATTORNEY GENERAL.

Suffolk.    December 10, 1971. – March 15, 1972.

Present: TAURO, C.J., CUTTER, SPIEGEL, REARDON, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Gasoline. Lottery. Jurisdiction,* Federal field. *Constitutional Law,* Due process of law, Interstate commerce, Police power, Equal protection of laws, Gasoline. *Equity Jurisdiction,* Declaratory relief. *Equity Pleading and Practice,* Counterclaim, Declaratory proceeding.

In a suit in equity against the Attorney General for a declaratory decree as to the constitutionality of G. L. c. 271, § 6C, a counterclaim by the defendant seeking a declaration of the applicability of §§ 7, 20, to the facts in question was permissible. [405–406]

Promotional contests and games for prizes determined by chance conducted by sellers of motor vehicle fuel who did not require a purchase or payment for participation lacked the element of price necessary to make them lotteries and did not violate G. L. c. 271, § 7; and the game pieces used in connection with such games were not a common nuisance under G. L. c. 271, § 20, prohibiting the possession of lottery tickets. [406–408]

Promulgation by the Federal Trade Commission of a rule regulating games of chance in the food retailing and gasoline industries did not preëmpt the field of regulating promotional contests and games nor create a conflict between it and G. L. c. 271, § 6C, prohibiting the offering of prizes by sellers of motor vehicle fuel. [408–412]

There was no merit in a contention that G. L. c. 271, § 6C, prohibiting the giving of prizes by sellers of motor vehicle fuel is invalid in that Federal interest predominates in the area of multimarket advertising. [412]

G. L. c. 271, § 6C, prohibiting the offering of prizes by sellers of motor vehicle fuel is a proper exercise of the police power and is not violative of due process of law. [412–414]

G. L. c. 271, § 6C, prohibiting the conducting by sellers of motor vehicle fuel of promotional contests and games for prizes determined by chance "in connection with the sale of goods or services" did not deny equal protection of laws to sellers of motor vehicle fuel

who also sold at their service stations many nonfuel goods in competition with other sellers of nonfuel goods to whom § 6C did not apply. [414–418]  HENNESSEY, J., joined by TAURO, C.J., dissenting.

BILL IN EQUITY filed in the Supreme Judicial Court for the county of Suffolk on October 4, 1968.

The suit was reserved and reported by *Cutter*, J.

*George E. Donovan* (*William A. Ryan, Jr., Howard J. Wayne, & Roy P. Creedon* with him) for Mobil Oil Corporation & another.

*Robert T. Capeless* for Glendinning Companies, Inc.

*Timothy F. O'Leary*, Assistant Attorney General, for the Attorney General.

BRAUCHER, J.   In this bill in equity filed in the county court, the plaintiffs seek a declaration that G. L. c. 271, § 6C, inserted by St. 1968, c. 602, entitled, "An Act prohibiting the giving of chances or the offering of prizes by gasoline stations" is unconstitutional as applied to them. The matter was reserved and reported, without decision, to this court by the single justice.   We have before us the pleadings and a statement of agreed facts including a substantial number of lengthy exhibits.

The plaintiffs are Mobil Oil Corporation (Mobil), a New York corporation doing business in Massachusetts as both a wholesaler and retailer of motor vehicle fuels; Joseph G. Kulper, the owner of Four Mile Sales & Service in Westfield, who purchases gasoline from Mobil and sells it at retail; and Glendinning Companies, Inc. (Glendinning), a Connecticut corporation that plans, develops and arranges sales promotions, including promotional games and contests, and mails to its customers in Massachusetts the materials necessary to conduct such games and contests.

The defendant answered and counterclaimed, seeking a declaration that the statute is valid, that the continued use of game promotions is prohibited by G. L. c. 271, § 7, which prohibits lotteries, and that the game pieces used in connection with game promotions are a common nuisance under G. L. c. 271, § 20, which makes possession of

lottery tickets unlawful. The defendant also filed a demurrer to the bill in so far as Glendinning may be a party thereto, for the reason that Glendinning lacks standing to challenge the constitutionality of the statute.

General Laws c. 271, § 6C, provides, *"No dealer or seller of motor vehicle fuel* shall engage in, promote or in any way operate any contest or game by which a person may, as determined by chance, receive gifts, prizes or gratuities *in connection with the sale of goods or services.* This section shall apply to any such contest or game whether or not a purchase is required to participate therein" (emphasis added). Violations of the statute are punishable by either fine or imprisonment.

The facts are here set forth. Mobil is a wholesaler and retailer of motor vehicle fuel. Kulper is also a retailer of such fuel. However, the business operations of both Mobil and Kulper are not limited to the sale of motor vehicle fuel. At service stations operated by them, Mobil and Kulper compete with other merchants in the sale of tires, batteries, oil, anti-freeze and other automotive parts and accessories. Competition also exists between Mobil and Kulper and other merchants in providing related automotive services such as tire changing, car washing and lubricating as well as selling, installing and repairing sundry motor vehicle parts and accessories. Also, both companies compete with other merchants in the sale of nonautomotive products such as soft drinks, cigarettes and razor blades. All of these products and services are provided by Mobil and Kulper at the same premises as, and in connection with, the retail sale of motor vehicle fuel.

The financial data before us indicate that the sale of products other than motor vehicle fuel by Mobil and Kulper constitutes an important and substantial part of their overall business. For example, in the first six months of 1968, at the two service stations operated by it in the Boston selling area, Mobil sold more than $60,000 of products other than motor vehicle fuel. Also, during 1967, Kulper sold more than $10,000 of such products at his service

station in Westfield. At wholesale, Mobil sold more than $1,467,131 of these nonfuel products in the Boston area in 1967 and about $1,284,560 of them in the first eight months of 1968.

The record before us also demonstrates that there are a substantial number of diverse businesses which compete with Mobil and Kulper in the sale of nonfuel products. These competing businesses include not only car washes, auto body shops, automobile repair garages and automobile dealerships, but also five and ten cent stores, automotive stores, department stores, discount stores, hardware stores, drugstores, variety stores and supermarkets.

Prior to the enactment of the statute now in controversy, Mobil utilized promotional games and contests at service stations operated by it and encouraged their use among service station dealers who bought motor vehicle fuel at wholesale from Mobil and resold it under Mobil's trade names. There was, however, no right on the part of Mobil to compel dealers to participate in the games. The record is devoid of any facts which would indicate that any compulsion was ever exerted.[1]  Although the admitted purpose of utilizing the games was to increase sales, no purchase was necessary to participate in the contests. The fact that a person could obtain a game piece without any purchase and without any payment upon visiting the participating station was made known to the public through extensive publicity.

The record before us indicates that those businesses which competed with Mobil and Kulper in the sale of nonfuel products also conducted promotional games and contests in connection with the sale of those products.[2]  The

---

[1] Statistics before us indicate that dealer participation declined throughout most of the games.

[2] The exhibits before us demonstrate that the following nonfuel sellers conducted promotional games in competition with the plaintiffs: General Tire stores, "Holiday for 2"; Sears, Roebuck & Company, "Fiesta Days Shopping Spree"; Iandoli's Supermarket, "Money Letters"; The Big G Discount Food Stores, "Surethingo"; Lechmere Sales, "Win a Week."

games and contests operated by these competing merchants were essentially similar to those that were operated by Mobil and Kulper, in that they each involved the giving, at a store, service station or other selling location, but without the requirement of a purchase or payment, of game pieces which alone or in combination with other game pieces might, as determined by chance, entitle the recipient to a prize. Finally, the exhibits before us demonstrate that substantial measures were taken by the plaintiffs to insure the fairness of the contests and that there was no significant difference in the retail prices charged by dealers using promotional games in contrast to the prices charged by dealers who did not use such games.

1. We consider first the defendant's counterclaim, in which he seeks a declaration that the continued use of game promotions is prohibited by G. L. c. 271, § 7, which outlaws lotteries, and that the game pieces used in connection with the games are a common nuisance under G. L. c. 271, § 20, which makes possession of lottery tickets unlawful.

The use of a counterclaim is permissible in suits for declaratory relief. *Growers Outlet, Inc.* v. *Stone*, 333 Mass. 437, 441. Also, the fact that we are here concerned with the possible enforcement of a criminal statute does not preclude us from rendering a declaratory decree. *Sun Oil Co.* v. *Director of the Div. on the Necessaries of Life*, 340 Mass. 235, 239. *Commonwealth* v. *Baird*, 355 Mass. 746, 755. From the viewpoint of the public prosecutor, the constitutionality of G. L. c. 271, § 6C, would have greatly reduced importance if the conduct in question were illegal in any event. The special provision for dealers or sellers of motor vehicle fuel might then have remedial or procedural significance, but it would not have great significance as a regulation of commercial conduct. A declaration that the special provision is constitutional or unconstitutional would have a meaning quite different if the conduct were independently illegal from its meaning if the conduct were otherwise legal. In these circum-

stances we think a declaration of the parties' rights is proper. Such a declaration will also, in our view, terminate the uncertainty and controversy attendant upon the widespread use of these games by others than gasoline sellers. G. L. c. 231A, § 9.

This court has consistently held that three elements must exist in order for any scheme to constitute a lottery. The three elements are payment of a price, a prize, and some element of chance. *Commonwealth* v. *Wall*, 295 Mass. 70, 72. *Commonwealth* v. *Lake*, 317 Mass. 264, 267. *Commonwealth* v. *Rivers*, 323 Mass. 379, 381. We have also stated that price means "something of value and not merely the formal or technical consideration, such as registering one's name or attending at a certain place, which might be sufficient consideration to support a contract," *Commonwealth* v. *Heffner*, 304 Mass. 521, 523, and that "the price must come from participants in the game in part at least as payments for their chances and that the indirect advantage to the . . . [one conducting a game at his place of business] is not in itself a price paid by participants." *Commonwealth* v. *Wall*, 295 Mass. 70, 74. Finally, we have emphasized that whether or not a particular scheme amounts to a lottery depends upon the particular facts and circumstances of each case. *Commonwealth* v. *Heffner*, 304 Mass. 521, 524–525.

In this case, the elements of chance and prize were present. In each case, persons calling at participating service stations were entitled to receive game pieces which by themselves or when matched with other game pieces might entitle the recipient to a prize. However, it was made clear to the public through frequent and clear advertising that participants were not required to make any payments or purchases in order to participate in the games. Nothing in the record indicates that this basic rule was not understood.

The defendant argues that the necessary price was present inasmuch as the use of the game increased the volume of business of the participating stations. He relies on decisions from other jurisdictions which have

so held. *Winn-Dixie Stores, Inc.* v. *Boatright,* 115 Ga. App. 645. *Lucky Calendar Co.* v. *Cohen,* 19 N. J. 399. *State ex rel. Schillberg* v. *Safeway Stores, Inc.* 75 Wash. 2d 339, 351. He also relies on the so called "bank night" cases decided by this court. *Commonwealth* v. *Wall,* 295 Mass. 70. *Commonwealth* v. *Heffner,* 304 Mass. 521. His arguments fail.

The "bank night" cases are distinguishable from the present case. Those cases involved schemes whereby prizes were awarded at a theatre close to, or between, the times of performances. Attendance at the theatre at the time of the awarding of the prizes was required. In each of the "bank night" cases, the arrangements were such that, although not required to do so, participants who purchased theatre tickets gained a distinct advantage over those who did not purchase them. See *Commonwealth* v. *Wall, supra,* at 73; *Commonwealth* v. *Heffner, supra,* at 524.

The game promotions involved in the case before us did not require the presence of any participant at any particular place. Winning pieces were redeemable over a period of weeks. No admission charge, purchase, or payment was required by service stations participating in the games, a fact which was well publicized throughout their use. Finally, those who purchased products at participating service stations gained no advantage whatsoever over those who received their game pieces without making any purchases.

In view of our earlier decisions, we now hold that the incidental increase in business attendant upon the use of promotional games like those involved in the present case is not the type of consideration necessary to make these games lotteries. We decline to follow decisions from other jurisdictions which have reached a different result. On the contrary, we observe that there is ample authority for the result which we have reached here. *Caples Co.* v. *United States,* 243 F. 2d 232 (D. C. Cir.). *California Gasoline Retailers* v. *Regal Petroleum Corp. of Fresno, Inc.* 50 Cal. 2d 844. *State* v. *Bussiere,* 155 Maine, 331.

*Cudd* v. *Aschenbrenner*, 233 Ore. 272. *State* v. *Big Chief Corp.* 64 R. I. 448. It follows from what we have said that no violation of G. L. c. 271, §§ 7, 20, exists in the continued operation of the games.

2. The defendant argues that Glendinning lacks standing to maintain the present proceeding because it has no place of business in this Commonwealth, and employs no agents or employees here, and because the statute by its express terms does not apply to it. This we need not decide, for there are other plaintiffs who do have standing. The statute here involved is not simply one which subjects Glendinning to possible competition. See *Circle Lounge & Grille, Inc.* v. *Board of Appeal of Boston*, 324 Mass. 427, 429–430. Rather, it completely deprives Glendinning of a substantial portion of its income from business conducted in Massachusetts. Compare *Pierce* v. *Society of Sisters*, 268 U. S. 510, 535; *Mueller* v. *Commission of Pub. Health*, 307 Mass. 270, 274. See also *Association of Data Processing Serv. Organizations, Inc.* v. *Camp*, 397 U. S. 150. We turn now to a discussion of the several constitutional issues raised by the plaintiffs.

3. The plaintiffs contend that G. L. c. 271, § 6C, conflicts with Federal law and is therefore invalid by reason of the "supremacy clause" of the United States Constitution. Art. 6, second par. Specifically, they argue that the matters encompassed by § 6C have been preëmpted by Federal law because of the Federal Trade Commission's promulgation of a rule regulating games of chance in the food retailing and gasoline industries (34 Fed. Reg. 13302 [1969], 16 C. F. R. [1971] § 419) and because Federal interests predominate in the area of multimarket advertising. Both arguments fail.

We agree that the Federal Trade Commission (Commission) has been given broad authority by Congress to act in the areas of "unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce." 15 U. S. C. §§ 45 (a) (1), 46 (g) (1970). We also agree that rules promulgated by the Commission "have the force and effect of law." *Hill* v. *Federal Trade*

*Commn.* 124 F. 2d 104, 106 (5th Cir.). *Kritzik* v. *Federal Trade Commn.* 125 F. 2d 351, 352 (7th Cir.). *Schaffer* v. *Leimberg,* 318 Mass. 396, 404–405. *Mastrullo* v. *Ryan,* 328 Mass. 621, 622. However, those factors alone do not require us to hold that in every commercial area where the Commission has acted, a State must yield its power to regulate in that same area for the benefit of its own citizenry. To make such a determination we must inquire further.

The Supreme Court of the United States has said that "[t]his Court, in considering the validity of state laws in the light of . . . federal laws touching the same subject, has made use of the following expressions: conflicting; contrary to; occupying the field; repugnance; difference; irreconcilability; inconsistency; violation; curtailment; and interference. But none of these expressions provides an infallible constitutional test or an exclusive constitutional yardstick. In the final analysis, there can be no one crystal clear distinctly marked formula." *Hines* v. *Davidowitz,* 312 U. S. 52, 67. *Pennsylvania* v. *Nelson,* 350 U. S. 497, 502. The "controlling principle" enunciated in the *Hines* case was whether the State statute "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines* v. *Davidowitz,* 312 U. S. at 67. This articulation of the meaning of the supremacy clause has since been adhered to by the Supreme Court of the United States on numerous occasions. *Perez* v. *Campbell,* 402 U. S. 637, 649–650, and cases cited. In the *Perez* case, the Supreme Court of the United States restated the *Hines* rule as follows: "any state legislation which frustrates the full effectiveness of federal law is rendered invalid by the Supremacy Clause." 402 U. S. at 652.

In the *Perez* case, a State statute prohibited the operation of a motor vehicle by any person against whom there was an unsatisfied motor vehicle tort judgment, regardless of whether the affected person had obtained a discharge in bankruptcy. The Supreme Court of the United States declared that the statute was invalid as it frus-

trated the full effectiveness of the Bankruptcy Act which is intended to give debtors "a new opportunity in life . . . unhampered by the pressure and discouragement of preexisting debt." *Perez* v. *Campbell*, 402 U. S. 637, 648, quoting from *Local Loan Co.* v. *Hunt*, 292 U. S. 234, 244.

An important factor to be considered in determining whether a particular area of legislative concern has been preëmpted by Federal law is the existence of any manifestations of intent, expressed or otherwise, that the particular Federal law was to occupy the field exclusively. "The intention of Congress to exclude States from exerting their police power must be clearly manifested." *Napier* v. *Atlantic Coast Line R.R.* 272 U. S. 605, 611, and cases cited. *Commonwealth* v. *Haseotes*, 356 Mass. 230, 236. *Rice* v. *Sante Fe Elev. Corp.* 331 U. S. 218, 231–236. *Pennsylvania* v. *Nelson*, 350 U. S. 497, 501–506.

An examination of the rule of the Commission, including its scope and effect, and the circumstances existing at the time of its adoption, demonstrate no clear intent that the States may not legislate in the area of promotional games and contests. By its terms, the rule is limited in its coverage in that it regulates only games and contests conducted by the retail food and gasoline industries. The circumstances surrounding its promulgation indicate that only the retail food and gasoline industries were investigated by the Commission and that the rule was designed to prevent actual and potential abuses which were found to exist in those industries. Statement of Basis and Purpose, Trade Regulation Rule on Games of Chance in the Food Retailing and Gasoline Industries, 34 Fed. Reg. 13302 (1969).

We believe that the rule was intended to establish minimum standards of regulation which the Commission deemed necessary to protect the public from deceptive acts and practices. Nowhere in the history of the rule is there any clear indication that the States were to be precluded from legislating in this area. In fact, prior to

the rule's promulgation, promotional games similar to the ones involved here had been declared illegal in a substantial number of jurisdictions as contrary to local anti-gambling or lottery statutes. *Herald Pub. Co.* v. *Bill,* 142 Conn. 53. *State* v. *Eckerd's Suburban, Inc.* 53 Del. 103. *Blackburn* v. *Ippolito,* 156 So. 2d 550 (Fla.). *Boyd* v. *Piggly Wiggly So. Inc.* 115 Ga. App. 628. *Midwest Television, Inc.* v. *Waaler,* 44 Ill. App. 2d 401. *Idea Research & Dev. Corp.* v. *Hultman,* 256 Iowa, 1381. *State ex rel. Line* v. *Grant,* 162 Neb. 210. *Lucky Calendar Co. Inc.* v. *Cohen,* 19 N. J. 399. *Knox Indus. Corp.* v. *State ex rel. Scanland,* 258 P. 2d 910 (Okla.). *Featherstone* v. *Independent Serv. Station Assn. of Texas,* 10 S. W. 2d 124 (Tex. Civ. App.). *State ex rel. Schillberg* v. *Safeway Stores, Inc.* 75 Wash. 2d 339. *State ex rel. Regez* v. *Blumer,* 236 Wis. 129. Moreover, at the time that the rule took effect, statutes specifically prohibiting such games and contests were in effect in at least three jurisdictions. Mass. G. L. c. 271, § 6C. Anno. Code Md., art. 56, § 144A. Mich. Comp. Laws Anno., § 750.372. In view of the demonstrated local interest in this area, we believe that had the Commission intended to affect the substantial body of existing State law and preclude further State action it would have expressly so stated.

Furthermore, as observed above, the rule was promulgated to protect the public from the actual and potential abuses found to exist in this area. General Laws c. 271, § 6C, was enacted to accomplish the same result. As we view the matter, our statute in no way "stands as an obstacle to the accomplishment and execution of the full purposes and objectives" of the Commission. *Hines* v. *Davidowitz,* 312 U. S. 52, 67. On the contrary, it seeks to further those purposes and objectives. "The principle to be derived from our decisions is that federal regulation of a field of commerce should not be deemed preëmptive of state regulatory power in the absence of persuasive reasons — either that the nature of the regulated subject matter permits no other conclusion, or that the Congress

has unmistakably so ordained." *Florida Lime & Avocado Growers, Inc.* v. *Paul,* 373 U. S. 132, 142. Neither reason exists here.

The plaintiffs' final argument with respect to preëmption is that Federal interest predominates in the area of multimarket advertising. We disagree.

We have repeatedly stated that "[t]he interstate commerce clause did not withdraw from the states the power to legislate with respect to their local concerns, even though such legislation may indirectly and incidentally affect interstate commerce and persons engaged in it." *Commonwealth* v. *New York Cent. R.R.* 350 Mass. 724, 728, quoting from *Boston & Maine R.R.* v. *Armburg,* 285 U. S. 234, 238. *Commonwealth* v. *Haseotes,* 356 Mass. 230, 234.

The statute here in question does not prohibit the intrastate or interstate advertising and sale of motor vehicle fuel by Mobil or Kulper. The statute is directed only at certain types of promotional activities which take place in Massachusetts. The fact that the promotion and sale of products sold here and elsewhere has been the subject of Federal concern does not prevent our Legislature from adopting reasonable regulations affecting that promotion and sale within Massachusetts. *Mueller* v. *Commissioner of Pub. Health,* 307 Mass. 270, 276. See *Head* v. *New Mexico Bd. of Examrs. In Optometry,* 374 U. S. 424, 431–432.

4. The plaintiffs make the further argument that the statute is unconstitutional because it arbitrarily interferes with their right to conduct and promote their business and is, therefore, violative of due process. Fourteenth Amendment to the United States Constitution. Arts. 1, 7, 10, 12, of the Declaration of Rights. We do not agree.

We begin our consideration of the issue as to due process of law by stating the well settled rule that "[a]ll rational presumptions are made in favor of the validity of every legislative enactment. Enforcement is to be refused only when it is in manifest excess of legislative

power." *Commonwealth* v. *Finnigan*, 326 Mass. 378, 379.
*Massachusetts Commn. Against Discrimination* v. *Colangelo*, 344 Mass. 387, 390. *Coffee-Rich, Inc.* v. *Commissioner of Pub. Health*, 348 Mass. 414, 422. Equally well
established in our law is the principle that one cannot operate his business or pursue his profession in any manner
he sees fit, that he is subject to reasonable regulations
established to govern the operation and conduct of the
particular business. *Slome* v. *Chief of Police of Fitchburg*, 304 Mass. 187. *Commonwealth* v. *Libbey*, 216
Mass. 356, 358.

In *McMurdo* v. *Getter*, 298 Mass. 363, 366, we said
"that right [to conduct one's business], like many others,
may be qualified or restricted under the police power, —
the broad power, never precisely delimited, to take rational action for the protection of the public safety,
health, morals, comfort and good order." Whether the
statute here involved is a valid exercise of the police
power depends upon whether it "bears a real and substantial relation to the public health, safety, morals, or some
other phase of the general welfare." *Coffee-Rich, Inc.* v.
*Commissioner of Pub. Health*, 348 Mass. 414, 422, quoting from *Sperry & Hutchinson Co.* v. *Director of the Div.
on the Necessaries of Life*, 307 Mass. 408, 418.

Applying the above tests to this case, we conclude that
the present statute is a valid exercise of the police power
in so far as it seeks to prohibit certain types of promotional activity in connection with the sale of products to
the public. Undoubtedly, the Legislature had many considerations in mind when it enacted this statute. Among
them must have been a desire to prevent the possible
abuses, including unfairness, fraud and deception which
might exist in any game of chance. Although the games
in question here do not violate our anti-gambling or lottery statutes, our Legislature could appropriately broaden
those statutes, as has been done in other jurisdictions.

More importantly, the present statute is not directed at
games of chance generally but rather at games of chance
when used in connection with the sale of goods. In this

respect, the Legislature by its action determined that such games should play no part in the sales process. We cannot say that its determination was without reason. It could properly believe that considerations of price, quality, versatility, and so forth are some of the many valid criteria to be employed in making intelligent consumer purchases, and that use of such criteria is to be encouraged. On the other hand, it could disapprove the element of chance and the possibility of winning a prize as bases for consumer differentiation among competing products. The Legislature might rationally seek to discourage the real, though sometimes unconscious, attraction to one of several competing products, solely because a prize may be won, as not in the public interest. The statute here in question was intended to secure that objective. Therefore, it is not violative of due process of law.

5. The plaintiffs also argue that the statute is unconstitutional because they are being deprived of the equal protection of the laws. Their premise here is that the statute applies to motor vehicle fuel sellers only and prohibits them from using the contests in connection with the sale of any products including those products sold by competitors who are not similarly prohibited from using the contests. They conclude that the statute contains an irrational classification and one that cannot be sustained under the equal protection clauses of the State and Federal Constitutions. Fourteenth Amendment to the United States Constitution. Arts. 6, 7, of the Declaration of Rights.

This argument has two branches. First, the statute is said to be overbroad, indeed, on one possible reading, "grossly overbroad," because it is not limited to promotional games in connection with the sale of motor vehicle fuel. Second, it is criticized as underinclusive because it does not apply to competing sellers of goods and services other than motor vehicle fuel. The argument appears to have prevailed on both branches in a trial court in Maryland. On appeal the Maryland court suggested that the

statute could be confined by construction to promotional games relating to the sale of motor vehicle fuels, refused to pass on the equal protection issue in the absence of an evidentiary hearing, and remanded the case for such a hearing. *State's Attorney for Charles County* v. *Triplett*, 255 Md. 270, 285–288.[3]

We think the statute, properly read, is not overbroad. We do not think the Legislature intended to impose an irrational restriction on owners of dual or multiple businesses. The prohibition is directed to a "dealer or seller of motor vehicle fuel," and may properly be read to apply to his acts in that capacity. What he may do as a barber at an establishment several miles from his gasoline station, for example, is not affected. The "connection" contemplated by the statute cannot mean a connection with a specific purchase, since the statute by its terms applies "whether or not a purchase is required." Without anticipating every possible question as to the scope of the statute, we think it requires a functional relation to the business of selling motor vehicle fuel, whether by association with the same selling area, by customary commingling of functions, by specific referral, or otehwise.

So read, the statute is not vastly different from one limited to promotional games "in connection with the sale of motor fuels." Such a statute was held not to deny equal protection of the laws in *United Stations of N. J. (US)* v. *Getty Oil Co.* 102 N. J. Super. 459, 474–476, affd. on opinion below sub nom. *Del Spina* v. *Getty Oil Co.* 54 N. J. 150. The extension to games "in connection with" other goods and services when part of the business of selling motor vehicle fuel, if it is an extension, is reasonable in the interest of clarification and enforceability.

The record does not establish that the promotional games of gasoline dealers have distinctive misleading characteristics, that they adversely affect the retail price

---

[3] We observe that there now exists in Maryland a statute which prohibits the use of promotional games by all retail sellers in connection with the sale of all retail goods. Anno. Code Md., art. 27, § 369A.

of gasoline, or that they involve the coercion of gasoline dealers by landlord-suppliers. Therefore, it is argued, the prohibition must rest on general disapproval of the games, and the singling out of gasoline sellers is irrational and invidious.

We have recognized, however, that retail dealers in motor vehicle fuel may for some purposes be treated as a single group presenting special problems. G. L. c. 94, §§ 295A–295C. *Slome* v. *Chief of Police of Fitchburg,* 304 Mass. 187, 192. *Merit Oil Co.* v. *Director of the Div. on the Necessaries of Life,* 319 Mass. 301, 306. *Commonwealth* v. *Slome,* 321 Mass. 713, 714. Compare *Sperry & Hutchinson Co.* v. *Director of the Div. on the Necessaries of Life,* 307 Mass. 408, 419; *Sun Oil Co.* v. *Director of the Div. on the Necessaries of Life,* 340 Mass. 235, 236. The typical gasoline station is a familiar feature of our landscape, easily distinguished from most other retail establishments. Most of us visit a gasoline station every few days to make small purchases. The premises must be easily accessible to drive-in customers. The station sells standardized products distinguished primarily by brand name, and many stations are leased from or run by suppliers of national scope. They have been thought particularly vulnerable to destructive price wars and to unfair practices resulting from competitive pressures.

The Legislature could reasonably have thought, in 1968, that some or all of these features of the typical gasoline station made the problem of promotional games more pressing with respect to them than with respect to other retail merchants. The record before us adequately shows that in 1968 the use of games of chance by gasoline stations was very extensive, both in Massachusetts and elsewhere, and that there was a real prospect that it might become more so. Other types of retail establishments share some of the characteristics of gasoline stations and might well have been given similar consideration by the Legislature. The Commission, after studying the same subject, promulgated a rule responding to actual and potential abuses in the retail food industry as well as

in the gasoline industry. Statement of Basis and Purpose, Trade Regulation Rule on Games of Chance in the Food Retailing and Gasoline Industries, 34 Fed. Reg. 13302 (1969). There is some competition between the two industries in the sale of such items as cigarettes and soft drinks, but the Commission did not deal with such more directly competitive items as tires, batteries, lubrication and the installation and repair of motor vehicle parts and accessories. When legislative authority is exerted within a proper area, it need not embrace every conceivable problem within that field. The Legislature may proceed one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. *McDonald* v. *Board of Election Commrs. of Chicago,* 394 U. S. 802, 809. See *Mulligan* v. *Hilton,* 305 Mass. 5, 13; *Commonwealth* v. *Leis,* 355 Mass. 189, 198; *National Labor Relations Bd.* v. *Jones & Laughlin Steel Corp.* 301 U. S. 1, 46; *Hughes* v. *Superior Court of Cal. for Contra Costa County,* 339 U. S. 460, 468–469.

"A statutory classification in the area of social welfare is consistent with the Equal Protection Clause of the Fourteenth Amendment if it is 'rationally based and free from invidious discrimination.' *Dandridge* v. *Williams,* 397 U. S. 471, 487." *Richardson* v. *Belcher,* 404 U. S. 78, 81. See *Lindsey* v. *Normet,* 405 U. S. 56, 82, n. 5 (dissenting opinion of Douglas, J.). Examination of the opinions in the *Dandridge* case indicates that there was controversy whether legislative discretion in the area of social welfare is as broad as in the area of economic regulation, but no disagreement that in the area of economic regulation the equal protection clause does not justify review of the wisdom, need or appropriateness of legislation any more than does the due process clause. See *Opinion of the Justices,* 358 Mass. 827, 830, *G & M Employment Serv. Inc.* v. *Commonwealth,* 358 Mass. 430, 437; *Marshal House, Inc.* v. *Rent Control Bd. of Brookline,* 358 Mass. 686, 694–695; *Pinnick* v. *Cleary,* 360 Mass. 1, 27–28.

We know, as everyone does, that representatives of

special economic interests sometimes promote, in the name of the public interest, legislation which will hamstring their business competitors. Legislation otherwise valid is not, of course, invalid because some of its supporters have ignoble motives; nor do good motives validate invidious discrimination. In view of the arguments made in this case, however, we deem it appropriate to state that the record contains no hint that the statute in question here was supported by tire dealers, retail food stores, or other competitors of gasoline stations. Nor does it show any loss of business to such competitors as a result of the fact that Massachusetts gasoline stations have ceased to operate promotional games for fear of criminal prosecution for violation of the statute.

The plaintiffs' heavy reliance on *Hall-Omar Baking Co.* v. *Commissioner of Labor & Indus.* 344 Mass. 695, is misplaced. There a "hodge-podge" statute required peddlers in general to pay substantial license fees, which were a significant source of revenue to the Commonwealth. Milk companies were separately licensed for much more moderate fees. We held that bakery companies, which competed with milk companies for drivers, were denied equal protection of the laws. We noted that milk is a subject of special statutory concern, but found no reasonable relation between that concern and the more onerous burden placed on other itinerant sellers. The situation here would be comparable if promotional games were prohibited in connection with the sale of any merchandise except merchandise sold at a gasoline station. Compare *Vigeant* v. *Postal Tel. Cable Co.* 260 Mass. 335, 341; *Smith* v. *Cahoon,* 283 U. S. 553, 567; *Morey* v. *Doud,* 354 U. S. 457, 466.

6. A decree is to enter in the county court declaring that the operation of the promotional games, as described herein and as previously operated by the plaintiffs, is not prohibited by G. L. c. 271, §§ 7, 20, the so called "lottery statutes," and further declaring that G. L. c. 271, § 6C, inserted by St. 1968, c. 602, as applied to the plaintiffs,

does not violate any provision of the United States or Massachusetts Constitutions.

*So ordered.*

HENNESSEY, J.  (dissenting, with whom Tauro, C.J., joins) I dissent from the majority opinion.  In my view the statute is unconstitutional because the plaintiffs are being deprived of the equal protection of the laws.  The statute applies to motor vehicle fuel sellers only and prohibits them from using the contests in connection with the sale of any products including those products sold by competitors who are not under a similar prohibition. The statute, with immaterial language deleted, is clear and unambiguous, viz.: "No dealer or seller of motor vehicle fuel . . . [shall engage in or operate promotional games] in connection with the sale of goods or services." A careful examination of the record in the case and the controlling authorities leads me to the conclusion that the statute does contain an irrational classification and one that cannot be sustained under the equal protection clauses of the State and Federal Constitutions.  Fourteenth Amendment to the United States Constitution. Arts. 6, 7, of the Declaration of Rights.

The plaintiffs have an onerous burden of proof in their attempt to establish the unconstitutionality of the statute. All rational presumptions are made in favor of the validity of every legislative enactment.  *Commonwealth* v. *Finnigan,* 326 Mass. 378, 379.  Corollary rules which emphasize this principle have been fully set out in the main and concurring opinions of this court in the recent case of *Pinnick* v. *Cleary,* 360 Mass. 1, 14, 28, 32–33.

The concurring opinion of Chief Justice Tauro in the *Pinnick* case appropriately states, in substance, at p. 33, that the task of proving unconstitutionality of a statute is virtually insuperable in the absence of a factual foundation established in the record, by an evidentiary hearing or other means.  I have concluded that the plaintiffs

in the case before us have succeeded in establishing the constitutional invalidity of the statute because their arguments are premised, not merely upon speculation and guesswork but upon a comprehensive statement of agreed facts which incorporates a number of meaningful and relevant documents.

In my opinion the majority of the court have reached an erroneous decision as viewed in the perspective of the statement of agreed facts. I do not suggest that this court's consideration of the constitutional issues should be so carefully circumscribed as to preclude any consideration of factors which the court concludes are within the realm of common knowledge. However, the court's reasoning should reflect a reasonable deference to the agreed facts, particularly in view of the fact that the Attorney General has participated as a party to the agreed statement. Cf. *State's Attorney for Charles County* v. *Triplett*, 255 Md. 270, wherein the court declined to consider the equal protection issue in the absence of an evidentiary record.

The inconsistency between the majority's reasoning and the statement of agreed facts is especially shown in the majority's statement, with regard to the equal protection issue, that "[t]he Legislature could reasonably have thought, in 1968, that some or all of these features of the typical gasoline station made the problem of promotional games more pressing with respect to them than with respect to other retail merchants." A fair reading of the statement of agreed facts and attached exhibits does not support this speculation. In fact, a contrary inference fairly arises from the factual statement.

The discussion below of the equal protection issue has been placed, as I conclude it should be, in the framework of the relevant facts as presented to us by the parties.

The record demonstrates that Mobil and Kulper sell many and diverse nonfuel products and that the sale of such products constitutes a substantial portion of their business. The record also shows that a substantial number of nonfuel sellers compete with Mobil and Kulper in

the sale of nonfuel products and services.  These competing sellers include, among others, automotive stores, automobile dealerships, auto body shops, tire stores, hardware stores and department stores.  The competing products and services include, among others, the sale of tires, batteries, cigarettes and soft drinks, the changing of tires, automobile lubrication, and the selling, installing and repairing of sundry motor vehicle parts and accessories.

Mobil and Kulper, prior to the enactment of the statute, engaged in the use of promotional games and contests. The fact is also well documented in the record that those in competition with Mobil and Kulper likewise engaged in similar games and contests to promote the competing products.  The statute provides that sellers and dealers of motor vehicle fuel shall not utilize such games "in connection with the sale of goods or services."  By its terms, it does not prohibit those in competition with Mobil and Kulper from using the games and contests to promote the sale of competing products and services.

The general principles of law governing the constitutional challenge of a State statute as a denial of equal protection of the laws are well established.  "While a State has broad power when it comes to making classifications . . . it may not draw a line which constitutes an invidious discrimination against a particular class. . . . Though the test has been variously stated, the end result is whether the line drawn is a rational one." *Levy* v. *Louisiana*, 391 U. S. 68, 71.  Likewise, this court has stated that "statutes in regard to the transaction of business must operate equally upon all citizens who desire to engage in the business, and . . . there shall be no arbitrary discrimination between different classes of citizens." *Commonwealth* v. *Hana*, 195 Mass. 262, 266.  *Hall-Omar Baking Co.* v. *Commissioner of Labor & Indus.* 344 Mass. 695, 701.  To be sure, however, the constitution does not require that in every instance a statute must necessarily apply equally to all persons.  "The Constitution does not require things which are different in fact . . . to be treated

in law as though they were the same." *Tigner* v. *Texas,* 310 U. S. 141, 147.

Having in mind these principles, the test to be applied here is whether there is any rational basis for the Legislature's prohibition of promotional games of chance, but only when operated by individuals whose business includes selling motor vehicle fuel. Stated differently, is there rational justification for concluding that the sale of nonfuel products by those who sell motor vehicle fuel is any different from the sale of those same products by those whose business does not include the sale of motor vehicle fuel? I believe that no such justification exists either in fact or in reason.

My reading of the statute convinces me that it was primarily designed to prevent the actual and potential abuses found to exist in the use of promotional games and contests when conducted in connection with the sale of products and services. The evil, as determined by the Legislature, is promotional selling itself where the promotion consists of operating games and contests. The prohibition contained in the staute, however, is addressed to motor vehicle fuel sellers only and applies to the sale of all products sold by them. Obviously, the classification is not one based on the type of product since it applies to all products sold by motor vehicle fuel sellers. The distinction seems to be solely one of person: he who sells motor vehicle fuel as a large or small part of his business activity has become so specially affected that his promotion of nonfuel products on the same premises is prohibited, whereas those in competition with him in the sale of nonfuel products who sell no motor vehicle fuel are exempted from the prohibition.

The record establishes no reasonable justification for the distinction made in the statute. No evils found to exist in promotional selling were unique to those whose business activity included the sale of motor vehicle fuel. In fact, a similar rule for the proscription of promotional games promulgated by the Federal Trade Commission was a response to the actual and potential abuses found

to exist in the retail food industry as well as the gasoline industry. 16 C. F. R. (1971) § 419.1. Statement of Basis and Purpose, Trade Regulation Rule on Games of Chance in the Food Retailing and Gasoline Industries, 34 Fed. Reg. 13302 (1969). Furthermore, the record before us does not indicate that the use of such games in the fuel industry was particularly widespread as compared with other industries. On the contrary, the record demonstrates that such games and contests were used and advertised in connection with the sale of countless products other than gasoline and by a broad range of merchants who compete with gasoline sellers. Other evils which might accompany the use of promotional games, such as coercion by wholesalers on their franchisees to participate in the games and increases in the retail prices of products, are not borne out by the record. Even if they were, however, I believe that such evils would not be unique to motor vehicle fuel sellers but rather would exist as to all merchants of every class and description who use promotional games or contests.

In *Hall-Omar Baking Co.* v. *Commissioner of Labor & Indus.* 344 Mass. 695, we were faced with a type of restrictive classification similar to that which § 6C has imposed on gasoline sellers. There, the plaintiff bakery seller challenged the law relating to hawkers and peddlers, G. L. c. 101, which required driver-salesmen of bakery products, among others, to obtain peddler's liceneses, but exempted from the license requirements driver-salesmen of dairy products. The statute, intended to regulate potential abuses which existed in the peddling field, was addressed to a restricted class of persons rather than against certain peddling practices. In declaring the statute unconstitutional, this court said, "Milk is a subject of special statutory concern. . . . But that does not justify unequal application of laws regulating itinerant selling. Section 15 gives milk companies full exemption from the requirement of a hawker's and pedler's license. It is thus a regulation of itinerant selling which makes an arbitrary distinction between businesses which, so far as their

attributes relevant to such classification are concerned, are alike.   We perceive no basis for the distinction 'reasonably related to the purposes which the regulations seek to accomplish.' "   344 Mass. at 707.   The above language is equally applicable to the present case.   The record convinces me that gasoline sellers in their capacity as sellers of nonfuel products are no different from other sellers of nonfuel products and that the actual or potential evils attendant upon the use of promotional games by either group are the same.   That being the case, gasoline sellers may not be treated differently from others similarly situated.   See *State's Attorney for Charles County* v. *Triplett,* 255 Md. 270.[1]

The defendant, in seeking to sustain the constitutionality of the statute, relies on the decisions of this court which have sustained legislation regulating the size and placement of price signs by retail dealers in motor vehicle fuel.   G. L. c. 94, § 295C.   *Slome* v. *Chief of Police of Fitchburg,* 304 Mass. 187.   *Merit Oil Co.* v. *Director of the Div. on the Necessaries of Life,* 319 Mass. 301.   While those decisions do regard retail dealers in motor fuel as a single class for some legislative purposes, a careful examination of them convinces me that they do not control the facts of the present case.

In the *Slome* case, we specifically noted the narrow scope of our decision with respect to the price sign statute. Before holding that the statute was constitutionally permissible, we observed that it did not purport to regulate those aspects of a gasoline seller's business which were conducted in competition with other businesses including those selling nonfuel products.   "This statute deals only with signs designating the price of motor fuel. . . .   It in no way limits the proprietor of a filling station in using or displaying, upon any portion of the premises, signs of such dimensions as he may deem convenient, with lettering of such size as he may consider advantageous, advertising *every article,* including motor

---

[1] See footnote 3 of the majority opinion.

fuel, that he has for sale; and in every instance, *with the single exception of motor fuel,* he may set forth upon such signs the prices of the *various articles*" (emphasis added). 304 Mass. at 189. It is clear to me that the price sign decisions upheld the validity of the sign statute, including its singling out of retail fuel sellers as a separate group, *only* in so far as the statutes regulated the size and placement of the price signs. In this respect, there was no denial of equal protection because "[a]ll persons engaged in the retail sale of motor fuel are affected alike in the uniform enforcement of the statute." 304 Mass. at 192. In the present case, however, the record demonstrates that in the sale of nonfuel products, gasoline sellers and others are similarly situated and form one class. That being so, the present statute treats members of the same class unequally. Since there is no rational justification for the unequal treatment, it should not be sustained. A New Jersey decision upon which the defendant relies in his brief, *United Stations of N. J. (US)* v. *Getty Oil Co.* 102 N. J. Super. 459, is not inconsistent with this reasoning, because of a substantial difference between the statute there considered and the statute presently before the court. The New Jersey statute, 56:6–2 (f), prohibited the use of promotional games in connection with the sale of motor fuel only, and the court there correctly, in my view, relied upon the gasoline price sign cases in holding the statute to be constitutional.

The defendant directs the court's attention to those decisions which state that when legislative authority is exerted within a proper area, it need not embrace every conceivable problem within that field. See *Mulligan* v. *Hilton,* 305 Mass. 5, 13; *Commonwealth* v. *Leis,* 355 Mass. 189, 198; *National Labor Relations Bd.* v. *Jones & Laughlin Steel Corp.* 301 U. S. 1, 46; *Hughes* v. *Superior Court of Cal. for Contra Costa County,* 339 U. S. 460, 468–469. While I agree with that statement, I also believe that each step taken by the Legislature must be consonant with constitutional guaranties of equal protection and that rational support must exist for each such

step. *International Harvester Co. of Am.* v. *Missouri*, 234 U. S. 199, 215, and cases cited. *Traux* v. *Raich*, 239 U. S. 33, 43. *Sproles* v. *Binford*, 286 U. S. 374, 396. *National Labor Relations Bd.* v. *Jones & Laughlin Steel Corp.* 301 U. S. 1, 46. As I have observed above, whatever evils may be thought to be attendant on games and contests are attendant upon them whether they promote the sale of gasoline or food and whether they attract customers to a gasoline station to buy tires or to a tire store for the same purpose. Without question, the statute does not apply equally to competing businesses. To say that such unequal treatment is permissible because it is an initial step or one intended to be only partially remedial would do an injustice to the constitutional principle involved.

Furthermore, this court's decisions which have sustained legislation affecting certain businesses as distinct classes are distinguishable from the present case. In *Commonwealth* v. *Boston & Maine Transp. Co.* 282 Mass. 345, 351, we rejected a challenge to a licensing requirement applicable only to sight-seeing vehicles operating in and from Boston. We found that such vehicles can peculiarly affect the flow of traffic in and around Boston's historic sites. In this case, I have found no peculiar effect that gasoline sellers' games have upon the public safety in contrast to nonfuel sellers' games.

In *Opinion of the Justices*, 358 Mass. 827, 830, we stated that the proscription of certain monitoring devices could be applied to a class comprising manufacturing establishments and factories "as they are the places where time and motion studies would most likely be used." The record before the court does not establish that the class singled out by the statute, namely motor vehicle fuel sellers, is the one "most likely" to use promotional games. On the contrary, the statute singles out for total proscription only a fraction of the many users of promotional games.

In *Pioneer Credit Corp.* v. *Commissioner of Banks*, 349 Mass. 214, 221–224, this court upheld the exclusion

of certain banks from the class subjected to regulation with respect to finance charges for motor vehicle retail instalment sales contracts. The plaintiff, a small loans company, was subject to the statute and sought a declaration that the exemption of certain banks denied it equal protection of the laws. We held that the statute was valid. Essential to our decision was the recognition that banks were extensively regulated by both State and Federal laws and that this regulation included scrutinizing the financing of motor vehicle instalment sales contracts. Accordingly, we were of the opinion that, since there was substantially equal legislative treatment of similar businesses, there was no denial of equal protection. In the present case, the statute does not embody such constitutionally equal treatment of what I have determined are, in fact, similar businesses.