Midwest Television, Inc., an Illinois Corporation, Plaintiff-Appellee, v. Robert J. Waaler, State's Attorney of Champaign County, Illinois, Defendant-Appellant.

Gen. No. 10,483.

Third District.
December 19, 1963.

Robert J. Waaler, State's Attorney, Pro Se, and Jack Waaler, Assistant State's Attorney, both of Urbana, for appellant.

Meyer and Capel, both of Champaign, for appellee.

CARROLL, PRESIDING JUSTICE.
This is a declaratory judgment action in which plaintiff, a television broadcaster, sought to have the

Circuit Court declare that a certain advertising project consisting of the distribution of gift certificates by merchants is not a lottery as defined by the Illinois Criminal Code, and to further declare that prosecution of plaintiff by the State's Attorney of Champaign County for broadcasting such advertising would violate the United States Constitution.

Pursuant to Supreme Court Rule 48, the cause was submitted as an agreed case and a statement of the facts and points of law at issue between the parties was filed with the trial court.

Plaintiff is engaged in commercial television broadcasting in the State of Illinois, and is licensed by the Federal Communications Commission. Defendant is the State's Attorney of Champaign County, Illinois. From time to time, plaintiff broadcasts material from the national networks which may originate in other states. On December 1, 1962, the Richard Newman Associates, Inc., an advertising agency referred to herein as, "the Agency," offered to purchase advertising time from plaintiff on certain days in the year 1963; that during the period from January 10, to January 19, 1963, a client of the Agency was to hold an event called a January "Clean-Sweep Sweepstakes." A description of the material which the agency proposed to have plaintiff broadcast as the same appears in the statement of facts is as follows:

> "Each day, beginning January 10 and extending through January 19, 1963, participants of said event will be able to pick up tickets in any of the participating stores from desks or boxes located in a convenient place of said stores. The desks or boxes will be located in the front portion of each of said stores, and not in the primary selling area of said stores, nor in the primary area for advertising display for said stores. It will not be necessary for the participants to make a purchase in

order to secure said tickets, nor will they have to pass the cash register to secure the tickets. The tickets can be secured by merely walking into the participating store and picking them up. The tickets will consist of two sections, each with an identical number imprinted thereon. The participant will then tear the ticket in half, separating the two sections, and deposit one section in a box located at the source of said tickets. At 4:30 p. m., each day during the term of the event, the boxes containing the unretained sections of the ticket will be collected and the contents of each box placed in a large container; then a person, selected at random, would reach into the box, without seeing the numbers or the tickets in the box, and draw five tickets out of the box. These tickets would be designated the winning tickets for that day, and would be posted in a convenient place located in front of the participating stores; in addition, the numbers of the winning tickets would be published in the Champaign News-Gazette and the Champaign-Urbana Courier daily. The holder of a winning ticket would then be required to present the ticket on or before January 26, 1963, at a central location, and upon presentation of the proper ticket, the holder thereof would then be presented with a gift certificate good for $10 worth of merchandise, which can be redeemed in any of the participating stores."

The Agency had also offered to purchase commercial advertising time from plaintiff to advertise other events to be held in 1963 from time to time. These other events would be conducted the same as the January, 1963 event, with the exception of date, amount, and kind of prizes awarded. Plaintiff, after advising defendant of the rules and procedures of the events which were to be advertised, was advised by

403

the latter that if it advertised any of the proposed events, it would be prosecuted for advertising a lottery in violation of Sec 28–1, Chap 38, Illinois Revised Statutes 1961.

The points of law at issue between the parties are:

(1) Whether persons participating in the events which plaintiff proposes to advertise will have paid or promised consideration so as to render such an event "lottery," under Sec 28–2(b) Chap 38, Illinois Revised Statutes 1961.

(2) Whether plaintiff's advertising of such events would violate Sec 28–1(a)(9) Chap 38, Illinois Revised Statutes 1961.

(3) Whether plaintiff has the legal right to broadcast advertising of such events. Other points involving only constitutional questions are omitted.

The trial court held that the event or events described in the statement of facts do not constitute a lottery; that plaintiff in advertising said events would not violate the statute prohibiting the advertising of a lottery; that prosecution of plaintiff by defendant would violate the constitution of the United States; that plaintiff has a legal right to broadcast advertisements of such events and judgment was entered accordingly. Upon the theory that constitutional questions were involved, defendant's appeal from such judgment was taken directly to the Supreme Court. However the Supreme Court found the appeal to have been wrongfully taken to that court, and ordered the same transferred here.

The Supreme Court having indicated by its transfer order that no constitutional issues are involved, the question remaining for decision is whether the distribution of gift certificates in accordance with the plan outlined in the agreed statement of facts is a lottery, as defined in the 1961 Illinois Criminal Code. If the answer to such question be in the affirmative,

404

then plaintiff's proposed advertising of such distribution of gift certificates would violate Illinois law.

Sec 28–1(a), Chap 38, Illinois Revised Statutes 1961 is in pertinent part as follows: "A person commits gambling when he . . . (9) Knowingly advertises any lottery or policy game or drafts, prints or publishes any lottery ticket or share, or any policy ticket or similar device, or any advertisement of any lottery or policy game; . . ." Sec 28–2(b) of said Chap 38 defines a lottery as: ". . . any scheme or procedure whereby one or more prizes are distributed by chance among persons who have paid or promised consideration for a chance to win such prizes, whether such scheme or procedure is called a lottery, raffle, gift, sale or some other name." As indicated by its statutory definition, the essential elements of a lottery are (1) a prize, (2) a chance, (3) a consideration. That two of these elements, namely prize and chance, are present in the instant case is not disputed. Whether the third element, that of consideration, is likewise present constitutes the sole dispute between the parties. The defendant contends that the visit to the sponsoring store required in obtaining a ticket representing a chance on the gift certificate constitutes consideration as the term is used in the lottery statute. Plaintiff's counter argument is that the element of consideration is lacking because nothing of measurable value passes from the participants to the sponsor of the drawing.

Defendant relies principally upon Iris Amusement Corp. v. Kelly, 366 Ill 256, 8 NE2d 648; and Jones v. Smith Oil & Refining Co., 295 Ill App 519, 15 NE2d 42. The Iris case involved an advertising plan known as "Bank Night." Under such plan, any person could register for a prize at plaintiff's theatre. This could be done without paying admission or giving any consideration of any kind. All persons who had registered

were notified that on certain days during the performance at a certain hour there would be a drawing for a cash prize. The winner was announced to the audience and persons outside the theatre. The winner need not be inside the theatre, but any winner was required to reach the stage to claim his prize within three minutes. A winner who was outside when his name was announced might enter the theatre free of charge to claim his prize. The main question presented to the Supreme Court was whether such a scheme constituted a lottery and was designed to evade the lottery statute. Plaintiff there conceded the existence of two of the essential parts of a lottery, namely a chance and a prize; but contended the element of consideration was lacking because persons not attending the theatre and who paid no admission fee had a chance to win. The court observed that there appeared to be some diversity of opinion among courts of different states as to the merits of the plaintiff's contention. However after reviewing a number of cases from other jurisdictions, it reached the conclusion that operation of the "Bank Night" scheme was a lottery, and rejected the plaintiff's argument that the element of consideration was lacking in this language:

> . . . "the object of the theatre owner is not to fill the lobby or the sidewalk, but to fill the theatre, and that those who paid to come in, did so, at least in part, because they had, or reasonably believed they had, a better chance to win the prize than if they had stayed outside, and that they paid their money in part for that better chance. It is certain that the prize money came from the pockets of those who patronized the theatre, and that without patrons there would be no prizes. In actual operation those who paid to get in, paid for those on the outside in so far as those on the outside had a chance to win, and the

giving of free chances to those who did not come in could not alter the basic and essential character of the transaction. . ."

In the Jones case, the plaintiff, who operated a retail oil service station, sought an injunction restraining the defendant, a competitor, from operating a scheme known as the "Lucky License Pay-off Plan," alleging the same to be a lottery. Under such scheme any person visiting defendant's gas station and who owned and drove a car could obtain a ticket free of charge. It was not necessary to make a purchase in order to qualify for a free ticket. The ticket entitled the holder to a chance in a drawing for a prize of $200. The Circuit Court granted a temporary injunction as prayed, and defendant appealed. The Appellate Court in affirming the trial court followed the decision in the Iris case, and held that all the essential elements of a lottery were present. The defendant has also called our attention to numerous opinions of the Attorney General of Illinois in which that official has consistently taken the position that trips to the store or promoter's place of business is sufficient to constitute a consideration as that term is employed in the lottery statute. (See Illinois Attorney General's 1954 and 1962 opinions.) Plaintiff urges that Iris is not applicable to the case at bar because it was decided before the adoption of the new Criminal Code which contains a definition of a lottery; that in Iris, people paying admission and seated in the theatre had a better chance to win a prize and thus were paying for their chance; and because the winner there was required to appear and claim his prize within three minutes. We perceive no basic difference between the 1961 statutory definition of a lottery and that which the court adopted in Iris. In that case the court held that consideration moving to the promoter from the holders of free tickets was not lacking merely because

no money was paid for such free tickets. No attempt was made in the opinion to confine the element of consideration to something measurable in money. Likewise, the 1961 legislature has avoided adoption of any specific definition of consideration. We certainly may not assume that in defining a "lottery" the legislature intended to depart from or alter the public policy of this state toward gambling. The definition found in the statute is a concise statement to the effect that any scheme, regardless of its designation, in which the element of chance, prize and consideration concur is a lottery. Absence of any language limiting the "consideration paid or promised" to money would seem to indicate legislative recognition of the fact that promoters of lottery resort to unpredictable schemes designed to conceal the element of consideration. Whether it is present in any given scheme depends upon the method of operation. Thus the definition of consideration must remain flexible. The present statute in effect says that where persons have "paid or promised consideration" for a chance to win a prize, where the winner is determined by chance, they are participating in a lottery. It does not qualify the word "consideration," nor does it attempt to limit such word to money or other valuable consideration capable of being measured in dollars or cents. A commonly accepted definition of valuable consideration is that found in Arentsen v. Sherman Towel Service Corp., 352 Ill 327, 185 NE 822, which reads as follows: "A valuable consideration consists of some right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other." According to such definition, it appears to be immaterial whether one party sustains an actual pecuniary loss, or the other reaps an actual pecuniary benefit. In the case

at bar, a participant in the sweepstakes event could obtain tickets without paying out any money or making a purchase. However these free tickets could be picked up only at the store conducting the event. Those making purchases at such store could also secure tickets. As to the nonpurchasers it must be concluded that they were induced to visit the store only by the lure of the chance to win a prize. What other reason could be given for their visit? Obviously free ticket seekers entering the store became potential customers. The benefit accruing to the sponsor is the increase in the number of persons entering the store, regardless of whether or not they all come to buy his goods. The cost of the gift certificates awarded to winners comes out of the store profits. The source of the prize won by both nonpurchasing ticket holders and those making purchases is the profit realized by the store from the event. The fact that winners paid no money for their chances is without significance. The profits realized from participants making purchases from the sponsor paid for their free chances. There can be no serious doubt concerning the fact that as a result of the event a benefit accrued to the sponsor. This leaves only the question as to the consideration, if any, moving from the participants. To comply with the rules governing the event, every participant was required to go to the sponsor's store. Such requirement entailed the effort involved in leaving home and making a trip to the store to obtain a ticket. The further away from the store the ticket seeker lived the more effort was involved. A holder of a winning ticket would be required to expend further effort and undergo further inconvenience in order to present his ticket at the central location within a certain period of time. Thus a winner would be required to leave his home and make two trips. These required visits to the store

409

and the central location entail inconvenience and detriment to the participant; thus it cannot be said that consideration does not move from the participants.

Plaintiff has called our attention to a number of cases from other jurisdictions where upon facts with varying similarity to those in the case at bar it was held that a lottery did not exist. We do not think these decisions may be regarded as authority warranting the conclusion for which plaintiff contends. Opposition to lotteries has long been the public policy of our state. The constitution of Illinois has deprived the General Assembly of power to authorize lotteries for any purpose, and has enjoined upon it the duty of prohibiting such enterprises. (Sec 27, Art 4, Constitution of Illinois.) It is pursuant to such constitutional mandate that laws prohibiting lotteries have been enacted. It may well be the policy of other states to consider the events which plaintiff proposes to advertise as being legitimate advertising, and not lotteries. However, such circumstance does not in this case warrant deviation from the well established policy of Illinois.

The feature distinguishing lotteries from legitimate advertising promotions is pointed out in Kent v. City of Chicago, 301 Ill App 312, 22 NE2d 799, where the court said: . . . "The controlling fact in the determination of whether a given scheme or business is a lottery is determined by the nature of the appeal which the business makes to secure the patronage of its customers. If the controlling inducement is the lure of an uncertain prize, then the business is a lottery. . ." Here the value of the scheme as a business stimulator arises solely from the lure of winning a prize which it holds out to the public. We think this record demonstrates that the essential elements of a lottery are present in the event which plaintiff proposes to advertise and is therefore a lottery under

410

Illinois law. No other conclusion is warranted unless the reasoning in Iris and Jones is ignored.

■ There is no merit in plaintiff's contention that the field of regulation of lottery broadcasting on radio and television has been pre-empted by the United States Congress. Such argument was put to rest in the recent case of Head v. New Mexico Board of Examiners in Optometry, 374 US 424, 10 L Ed2d 983, 83 S Ct 1759, where the United States Supreme Court held that the Federal Communications Commission's jurisdiction to regulate radio advertising does not pre-empt New Mexico's authority to prohibit eyeglass price advertising by radio. The court pointed out that the statute there in question fell within the police power of a state, and further observed that a state law may not be struck down merely because it may in some way affect interstate commerce. In the instant case there is no conflict between the statute prohibiting the advertising of a lottery and the federal regulation of radio and television broadcasting and therefore the statute controls.

For the reasons indicated the judgment of the Circuit Court of Champaign County is reversed.

Reversed.

REYNOLDS and ROETH, JJ., concur.