## GREATER NEW ORLEANS BROADCASTING ASSOCIATION, INCORPORATED, et al.

v.

## UNITED STATES of America, et al.

### Civ. A. No. 94–656.

United States District Court, E.D. Louisiana.

Oct. 31, 1994.

---

Ashton Richard Hardy, Hardy & Carey, Metairie, LA, Marjorie Ruth Esman, Atty. at Law, New Orleans, LA, for plaintiffs Greater New Orleans Broadcasting Ass'n, Phase II Broadcasting, Inc., Radio Vanderbilt Inc.,

Keymarket of New Orleans, Inc., Professional Broadcasting, WGNO, Inc., Burnham Broadcasting Co.

Nancy Ann Nungesser, U.S. Atty's Office, New Orleans, LA, Lisa A. Olson, U.S. Dept. of Justice, Civ. Div., Theodore Hirt, Lois Bonsal Osler, U.S. Dept. of Justice, Washington, DC, for defendants U.S., F.C.C.

Charles L. Spencer, Hebert & Spencer, Baton Rouge, LA, for movant Louisiana Ass'n of Broadcasters.

## *ORDER AND REASONS*

EDWARD J. BOYLE, Sr., District Judge.

This declaratory action comes before the Court on motion for summary judgment filed by the plaintiffs, Greater New Orleans Broadcasting Association, Inc. ("broadcasters") and cross motion for summary judgment filed by the defendants, the United States of America and the Federal Communications Commission (collectively "FCC"), both parties having agreed that this matter can be determined summarily. Having considered the record, the memoranda of counsel and the law, the Court has determined that the motion of the plaintiffs should be denied and the motion of the defendant granted as submitted.[1]

Three issues concerning broadcast restrictions on casino advertising are presented to this Court on cross motion: (1) whether a stay of enforcement by the FCC in Nevada violates the equal protection clause; (2) whether prohibitions against the broadcast of certain "lottery" information apply to casino gaming; and (3) whether those restrictions violate the plaintiffs' freedom of speech, due process rights, freedom to contract and equal protection of the law under the First Amendment. These issues largely reflect those presented in *Valley Broadcasting v. United States,* 820 F.Supp. 519 (D.Nev.1993), wherein the district court granted summary judgment in favor of broadcasters and struck down the broadcast advertising restrictions imposed by statute and FCC regulations.[2] That decision focused on the First Amendment challenge and found that the FCC prohibitions did not directly advance substantial government interests and were unconstitutionally broad for purposes of the commercial speech analysis set forth in *Central Hudson Gas & Electric Corp. v. Public Service Commission,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980).

## EQUAL PROTECTION

■ The plaintiffs' equal protection claim is directed to the decision by the FCC to stay enforcement of the challenged broadcast regulations in Nevada pending appellate review of *Valley Broadcasting.* The plaintiffs do not dispute the fact that the stay was provoked by the district court decision, that the stay reduces uncertainty for those broadcasters within the state of Nevada or that the stay preserves FCC resources pending appeal. The plaintiffs do argue that because this stay effectively classifies Nevada broadcasters differently than other broadcasters, the plaintiffs have been denied equal protection of the law. The proposed result: a nationwide stay of enforcement pending the appeal of the *Valley Broadcasting* decision.

■ The broadcasters ask for application of a strict scrutiny standard to the FCC's decision because it allegedly intrudes on the fundamental right of free speech. This standard would require a compelling interest be served by the FCC restrictions which cannot be served by an alternative and less burdensome means. However, in *Dunagin v. City of Oxford, Mississippi,* 718 F.2d 738 (5th Cir.1983), the Fifth Circuit specifically rejected the argument that strict scrutiny applies where commercial speech was involved.

Furthermore, in all cases commercial speech is entitled to only a limited measure of protection under a different standard of review. Under the *Central Hudson Gas* test, the state must demonstrate a substantial interest which is directly advanced by the regulation. If the right to advertise

---

**1.** However, in light of recent Fifth Circuit jurisprudence and despite the consensus herein, the Court will ask for further advice regarding the standard applicable to the First Amendment analysis, as explained hereinafter.

**2.** An appeal from that decision is pending in the United States Court of Appeals for the Ninth Circuit.

978

for profits were fundamental, then parties to any particular commercial speech regulation could rely on a stricter standard of review—requiring a compelling state interest and necessary means chosen to attain in—by locating an unregulated class of advertisers and insisting on an equal protection analysis by the court.

*Id.,* 718 F.2d at 752. The Fifth Circuit continued: "Hence, unlike other areas of First Amendment protection, the commercial speech doctrine is concerned primarily with the level and quality of information reaching the listener." *Id.* The minimal scrutiny recognized by the Fifth Circuit in commercial speech equal protection cases requires that "the classification challenged need only be rationally related to a legitimate [governmental] interest." *Id.,* 718 F.2d at 753. Without acknowledging *Dunagin* or this rule, the plaintiffs do alternatively argue that the FCC's stay in Nevada fails even the lesser "rational basis" test.

This Court recognizes the lesser rational basis standard as applicable to the equal protection challenge made in this matter, and finds that the FCC stay easily meets constitutional muster thereunder. For purposes of the lesser standard, the Court finds that the geographically limited FCC stay was rationally designed to accomplish a legitimate government goal.[3]

■ In addition, however, the Court finds that the FCC stay survives challenge under the stricter challenge applicable to speech entitled to full First Amendment protection. The allegedly offensive stay and resulting classification were based on the order of the district court. Obedience to the orders of the court is surely a compelling interest to all concerned. That obedience is secured by the contempt recognized upon violation. The stay accommodates the broadcasters in the state by providing a measure of certainty of the consequences of any actions. All concerned are spared from the anticipated deluge of individual declaratory actions seeking

clarification of the scope of the order which has yet to be declared final.

It is important to note that the stay is temporary in nature and limited in scope. The Nevada district court does not enjoy nationwide jurisdiction; its order is without effect elsewhere. Its order is not final within its jurisdiction until affirmed upon appeal. Yet by virtue of the stay, those within the state of Nevada were served while those persons in all other states, including those states which do outlaw casino gambling, did not have to undergo an unnecessary and perhaps only temporary change of policy. In this regard, it should be noted that the right to unregulated casino advertising was recognized for the *first* time in *Valley Broadcasting.* Under the circumstances, the clarity and conservation sought by the government is a compelling interest which could have been accomplished in no other manner that this Court can imagine, and certainly in no other manner suggested by the plaintiffs.

## STATUTORY APPLICATION

■ Next, the plaintiffs argue that casino gaming does not fall within the scope of the statute that empowers the FCC to regulate broadcasted advertising of casino gambling. That statute, 18 U.S.C. § 1304, provides in pertinent part:

Whoever broadcasts by means of any radio or television station for which a license is required by any law of the United States, or whoever, operating any such station, knowingly permits the broadcasting of, any advertisement of or information concerning any *lottery, gift enterprise or similar scheme,* offering prizes dependent in whole or in part upon lot or chance, or any list of the prizes drawn or awarded by means of any such lottery, gift enterprise, or scheme, whether said list contains any part or all of such prizes, shall be [guilty of an offense against the United States].

(Emphasis added).[4] Specifically, the plaintiffs argue that this statute does not prohibit advertisement concerning casino gambling

3. Similarly, the Court finds that the FCC action is not arbitrary, capricious or an abuse of discretion for purposes of review under 5 U.S.C. § 706(2)(A).

4. 47 C.F.R. § 73.1211 is a substantially similar rule being challenged in this matter.

because casino games cannot be considered a "lottery, gift enterprise or similar scheme."

This argument has yet to receive judicial recognition, failed before the district court in *Valley Broadcasting* and fails again here. Those things that fall within the coverage of the statute share three characteristics: (1) the distribution of prizes; (2) according to chance; (3) for consideration. *F.C.C. v. American Broadcasting Co.*, 347 U.S. 284, 74 S.Ct. 593, 98 L.Ed. 699 (1954). It is clear that all of those characteristics are enjoyed by casino gambling, regardless of the treatment given by any state enactment.

## FIRST AMENDMENT

The parties have grounded their First Amendment arguments on the *Central Hudson* analysis traditionally applied to restrictions on commercial speech.

In commercial speech cases, then, a four-part analysis has developed. At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

*Central Hudson,* 447 U.S. at 566, 100 S.Ct. at 2351. For purposes of the first factor, there is no dispute here that the proposed speech would concern lawful activity and not be misleading.

■ Disagreement sharpens on the second prong of the analysis. The FCC contends that the government has a substantial interest (1) in protecting the interest of nonlottery states and (2) in reducing participation in gambling and thereby minimizing the social costs associated therewith. The United States Supreme Court summarily recognized these interests in 1993 when it analyzed the right of radio stations in nonlottery states to broadcast lottery information in 1993:

As to the second *Central Hudson* factor, we are quite sure that the Government has a substantial interest in supporting the policy of nonlottery States, as well as not interfering with the policy of States that permit lotteries. As in *Posadas de Puerto Rico Associates v. Tourism Co. of Puerto Rico,* 478 U.S. 328, 106 S.Ct. 2968, 92 L.Ed.2d 266 (1986), the activity underlying the relevant advertising—gambling—implicates no constitutional protected right; rather, it falls into a category of "vice" activity that could be, and frequently has been, banned altogether.

*United States v. Edge Broadcasting Co.,* —— U.S. ——, 113 S.Ct. 2696, 125 L.Ed.2d 345 (1993).[5]

The plaintiffs maintain that the government interests cannot be deemed substantial because the number and nature of the statutorily recognized exceptions to the ban on lottery advertising have any alleged government interest existed "totally eviscerated." However, this argument leaves this Court without authority to disregard the Supreme Court's recent and clear message recognizing the substantiality of the government interests claimed here and in *Edge Broadcasting.*

■ The last two *Central Hudson* factors involve the consideration of the fit between the ends and the means chosen by the government. *Edge Broadcasting* advises that the third factor, whether the regulation directly advances the governmental interest asserted, has a broad focus.

It is readily apparent that this question cannot be answered by limiting the inquiry to whether the governmental interest is advanced directly as applied to a single person or entity. Even if there were no advancement as applied in that manner—in this case, as applied to Edge—there would remain the matter of the regulation's general application to others—in this

---

**5.** It should be noted that the district court in *Valley Broadcasting* found that the government had a substantial interest in exercising their commerce clause powers in a manner cognizant of state choices with regard to gambling, but refused to continue to acknowledge the traditional link between gambling and vice without the benefit of the guidance offered in *Edge Broadcasting.*

case, to all other radio and television stations in North Carolina and countrywide.

*Edge Broadcasting,* —— U.S. at ——, 113 S.Ct. at 2704. In *Edge Broadcasting,* the FCC had adopted a policy which permitted licensed broadcasters located in lottery states to broadcast lottery information while prohibiting those located in nonlottery states from such advertising, despite the interstate reach of the airwaves. Again, the Supreme Court found that the FCC regulation directly served the governmental interest in balancing the interests of the lottery and nonlottery states.

Here, the FCC regulations do not prohibit the broadcast of all information concerning casino gambling in Louisiana and Mississippi. Broadcasted advertisement for the state authorized casinos is abundant. The plaintiffs acknowledge that under certain circumstances it is entirely lawful to broadcast casino advertisements. However, advertisements must pertain to the casino's amenities, such as food and rooms. Advertisements cannot promote the gaming aspect of casinos. For instance, under FCC regulations, the word "casino" may be broadcast in an advertisement only if made part of the name of the establishment, but information about certain contests at casinos cannot be broadcast.

The plaintiffs, however, promote the argument that because casino advertising is presented in other non-broadcast media to persons in Louisiana and Mississippi, the FCC prohibitions are ineffective. However, it is equally clear that casino advertising is presented in broadcast media as well, albeit subject to the specific FCC rules. To the extent that the plaintiffs are arguing against the more intrusive regulation of broadcasting, this Court is mindful of the latest reaffirmation from the Supreme Court.

The justification for our distinct approach to broadcast regulation rests upon the unique physical limitations of the broadcast medium.... In addition, the inherent physical limitation on the number of speakers who may use the broadcast medium has been thought to require some adjustment in traditional First Amendment analysis to permit the Government to place limited content restraints, and impose certain affirmative obligations, on broadcast licensees. *Red Lion [Broadcasting Co. v. F.C.C.],* 395 U.S. [367] at 390, 89 S.Ct. [1794] at 1806–1807 [23 L.Ed.2d 371]. As we said in *Red Lion,* "[w]here there are substantially more individuals who want to broadcast than there are frequencies to allocate, it is idle to posit an unabridgeable First Amendment right to broadcast comparable to the right of every individual to speak, write, or publish." *Id.,* 395 U.S. at 388, 89 S.Ct. at 1806; (other citations omitted).

Although courts and commentators have criticized the scarcity rationale since its inception, we have declined to question its continuing validity as support for our broadcast jurisprudence.

*Turner Broadcasting System, Inc. v. F.C.C.,* —— U.S. ——, —— - ——, 114 S.Ct. 2445, 2456–2457, 129 L.Ed.2d 497 (1994). Given the broad scope of this third *Central Hudson* factor and the continuing validity of enhanced broadcast regulation, the subject restrictions on the advertisement of casino gambling are materially indistinguishable from those which so directly served the government interest in *Edge Broadcasting.*

The fourth *Central Hudson* factor does focus on the application of the restrictions in determining whether the regulation is more extensive than necessary to serve the governmental interest. A reasonable fit is required. This requirement is met if the regulation promotes the government interest "provided that it did not burden substantially more speech than was necessary to further the government's legitimate interest." *Edge,* —— U.S. at ——, 113 S.Ct. at 2705, *citing, Ward v. Rock Against Racism,* 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). The validity of the challenged restriction is measured by the relation it bears to the general problem represented by the government interest, not by the extent to which the prohibitions further that interest in an individual case. *Id.* This Court easily finds that the regulations governing broadcasted casino ad-

vertising have been narrowly constructed forpurposes of this last factor.[6]

The plaintiffs argue that each of the subject regulations are a "broad-based, undifferentiating, unrestricted total gag." (Rec.Doc. No. 17, p. 40). However, in light of the prohibitions on casino advertising actually imposed, this characterization is simply not accurate. The fact is that broadcasted casino advertising is permitted, limited by the specific gaming-related limitations now imposed by the FCC. In addition, even if the validity of the restriction was to be measured only as to our broadcasters, the presently imposed restrictions effectively advance the governmental interest in a constitutionally narrow manner.

In effect, the objections to the regulations being made by the plaintiff broadcasters were echoed in *Edge Broadcasting* and dismissed:

> Nor need we be blind to the practical effect of adopting respondent's view of the level of particularity of analysis appropriate to decide this case. Assuming for the sake of argument that Edge has a valid claim that the statutes violated *Central Hudson* only as applied to it, the piecemeal approach it advocates would act to vitiate the Government's ability generally to accommodate States with differing policies ... Because the approach Edge advocates has no logical stopping point once state boundaries are ignored, this process might be repeated until the policy of supporting [the nonlottery state's] ban on lotteries would be seriously eroded. We are unwilling to start down that road.

*Edge Broadcasting,* —— U.S. at ——, 113 S.Ct. at 2701.

In sum, the remaining limitations are reasonably fit to the recognized government interest both in design and in scope for purposes of the *Central Hudson* evaluation. The remaining restrictions imposed by the FCC are minor and constitutionally valid.

**APPLICABLE STANDARD**

The Court joins the parties in recognizing the application of *Central Hudson* to the First Amendment analysis herein. It notes that *Edge Broadcasting* unhesitantly applied that traditional test to the same statute and similar regulations. However, the Fifth Circuit has recently questioned that application in a commercial speech case where content-based restrictions are involved. *MD II Entertainment, Inc. v. City of Dallas, Texas,* 28 F.3d 492 (5th Cir.1994). Specifically, the Fifth Circuit referenced *R.A.V. v. City of St. Paul, Minnesota,* —— U.S. ——, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992), as questioning the general application of *Central Hudson* to all commercial speech cases.

The Court recognizes the fact that *R.A.V.* preceded *Edge Broadcasting* and that *Edge Broadcasting* did not rely on *R.A.V.*'s analysis at all. That is extremely persuasive evidence that *Central Hudson* is the correct standard here. However, because of the suggestion in *MD II,* the Court will seek further advice or consensus of counsel.

Accordingly,

IT IS ORDERED that the plaintiffs' motion to strike paragraph four of Greenberg's declaration is DENIED.

IT IS FURTHER ORDERED that counsel advise the Court **in writing** no later than November 7, 1994, whether issue exists regarding the standard to be applied to the First Amendment analysis.

---

**6.** In this regard, the plaintiffs' motion to strike paragraph four of Greenberg's declaration relating to the interstate nature of broadcasting lacks merit.